## FIRST NAT. BANK OF ALMA, KAN. *v.* MOORE *et al.*

(*Circuit Court, S. D. Ohio, E. D.* January 28, 1892.)

1. EQUITY PLEADING—MULTIFARIOUSNESS.
   A bill by the receiver of a bank against two other banks, and against two persons, each of whom is a managing officer in both defendant banks, to cancel certain certificates of indebtedness, and obtain the return of certain notes held as collateral security therefor, on the ground that all these securities were obtained in pursuance of a single fraudulent scheme, is not multifarious by reason of the fact that the interest of each defendant bank in the part of the securities held by it is separate from that of the other.

2. EQUITY JURISDICTION—FRAUD—REMEDY AT LAW.
   The existence of a remedy at law, in such a case, is no objection to the jurisdiction of equity, since equity jurisdiction in matters of fraud is concurrent with that at law, and in this case equity alone can give adequate relief by compelling the cancellation of the certificates and the return of the notes.

In Equity. Suit by the First National Bank of Alma, Kan., for the use of Frank T. Burt, receiver, against David H. Moore and Augustus Norton, the First National Bank of Athens, and the Pomeroy Bank, of Pomeroy, Ohio, for the cancellation of certain certificates, and the return of certain notes held as collateral security therefor. Heard on demurrer to the bill. Overruled.

The bill sets forth that the First National Bank of Alma was duly organized under the national banking act, and for more than two years last past has been doing a general national banking business at Alma, in the state of Kansas, under and by virtue of said organization; that, during the time said bank was engaged in business, John F. Limerick, of Alma, was its president, and had principal charge and control of its business, and his wife, Mary Limerick, was assistant cashier; that they two had the entire charge and management of the bank, except as the board of directors might otherwise direct, and that they were also directors; that the stockholders were largely residents of other states; that the defendants Moore and Norton are officers in said First National Bank of Athens and said Pomery National Bank, the said Moore being cashier of the First National Bank of Athens, and vice-president of the Pomeroy National Bank, and Norton president of the First National Bank of Athens, and an officer and director of the Pomeroy National Bank; that said defendants gave their personal and entire attention to the conduct-

ing of the affairs and business of said banks ; that they are experienced bankers, and that the business transactions with the First National Bank of Alma were conducted by said defendant Moore, as were transactions of said banks with said John F. Limerick or said Mary Limerick, the officers of said Athens bank and said Pomeroy bank and their stockholders knowing and ratifying the actions and doings of Moore.

The bill further sets forth that on the 10th of November, 1890, the comptroller of the currency, being satisfied that the Alma bank was insolvent, placed a duly-authorized bank examiner in possession of its assets; and on the 21st of November, 1890, appointed Frank I. Burt receiver of said bank; and on the 28th of November, 1890, he took possession, and has since remained in possession and control, of the assets, property, and business of the bank.

The bill further avers that the defendants have filed with said receiver claims based upon certificates issued by the Alma bank, as follows:    In favor of Norton, Moore, and the Athens bank, $13,591.53 ; and in favor of the Pomeroy bank, $2,500; each of said claims with 8 per cent. interest.    The complainant sets forth that the entire claims so filed and asserted are fraudulent, and that said fraudulent dealings of said Moore for himself and defendants have largely contributed to the insolvency of the Alma bank.    Complainant charges that said Moore, for himself and his co-defendants, who had full knowledge of Moore's proceedings in this business, induced said Limerick, president of the Alma bank, and said Mary Limerick, assistant cashier, to issue, over their signatures as officers of said bank, certificates of deposit in blank, so far as the name of the depositor was concerned, but for large amounts of money, and at a large rate of interest.    These certificates were sent or given to Moore, and by him sold or otherwise disposed of, and the proceeds appropriated to his own use and the use of the other defendants herein, often without returning to the Alma bank any consideration whatever, and generally no money passed at the time when said certificates were issued.

The bill enters into details of the fraudulent devices and contrivances whereby Moore carried into effect his designs; and sets forth that in July, 1890, he went to Alma, taking with him an attorney from Kansas City, and having in his possession a large number of time certificates of deposits purporting to have been issued by the Alma bank, and also promissory notes which he had obtained from John F. Limerick ; that he then demanded payment of said certificates and notes, and that at that time he also examined into the condition of the Alma bank, and that he and his co-defendants then knew that said bank was utterly insolvent, and unable to pay its indebtedness ; that he then, for himself and his co-defendants, threatened Limerick, acting as president of the bank, that upon his refusal to issue time certificates, bearing interest, for the amount claimed to be due himself and his co-defendants on account of said certificates and promissory notes, with a quantity of the promissory notes belonging to said bank as collateral security, he would at once call for a bank examiner to be sent to said bank, and the result would be that it would be closed, and a receiver appointed ; that by

these means he induced said John F. and Mary Limerick to issue to him a large number and amount of time certificates of said Alma bank bearing interest, and substitute them for other certificates previously issued. The bill avers that the claim made by said Moore and the defendants against the Alma bank is based upon certificates so obtained. The amount of the notes of the bank procured by Moore as collateral is, as set forth in the bill, which gives a list, with the name of the maker of each note and its amount, about $23,244.57. The defendants refuse to return said notes to the Alma bank or to its receiver, and have placed them in the hands of their attorney at Kansas City, with directions to bring suit for their collection, and suits have already been brought upon some of said notes in Kansas. The said notes constituted nearly all the available promissory notes belonging to said Alma bank upon which said receiver could depend for money to pay its indebtedness. The real estate of said bank amounts to about $5,000 in value; and the claims of creditors, other than the defendants herein, to about $22,000. The assets of said bank, outside of said promissory notes so taken and claimed by said Moore for himself and co-defendants, are not sufficient to pay more than 50 per cent. of the indebtedness of the bank.

The prayer of the bill is that the certificates aforesaid, upon which defendants base their claims, be declared void, and that they be delivered up and canceled; that said several promissory notes be declared to be assets of said Alma bank, and defendants be ordered to at once deliver them up, together with any proceeds realized therefrom; that, if any judgments have been obtained by defendants upon any of said notes, the same be declared to be for the use and benefit of said Alma bank; and that by the decree of this court the entire dealings and business between said bank and said defendants may be fully settled and determined; and an injunction issue restraining the defendants from selling or disposing of any of said promissory notes, or from collecting or bringing suit upon the same.

The defendants demur for multifariousness, for insufficiency, and for want of equity.

*Van Zile & Robson,* for complainant.

*Tom George* and *L. M. Jewett,* for respondents.

SAGE, J., (*after stating the facts.*) Although it appears from the bill that the Athens National Bank and the Pomeroy National Bank are entirely distinct and independent of each other as national banks, it also appears that the defendant Moore is cashier of the Athens bank, and vice-president of the Pomeroy bank, and the defendant Norton president of the Athens bank, and an officer and director of the Pomeroy bank; and that they acted in concert in the prosecution of the fraudulent scheme set forth in the bill. It is true that the proceeds of the fraud were divided among the defendants. The claims filed with the receiver in favor of Norton, Moore, and the Athens bank aggregate $13,591.53, with interest, and the claim in favor of the Pomeroy bank is $2,500, with interest. The rule stated by Sir JOHN LEACH in *Salvidge* v. *Hyde,*

5 Madd. 146, applies,—that the test is not whether each defendant is connected with every branch of the case, but whether the bill seeks relief in respect of matters which are in their nature separate and distinct. "If the object of the suit be single, but it happens that different persons have separate interests in distinct questions which arise out of that single object, it necessarily follows that such different persons must be brought before the court, in order that the suit may conclude the whole object." The relief sought in this case is the cancellation and delivery of all the fraudulent certificates, and the surrender of the securities obtained. The testimony relative to the fraud set forth in the bill will bear alike upon the claims of each of the defendants, and the circumstance that, if the decision be in favor of the complainant, it may be necessary to so shape the decree as to require the surrender by the defendants of the certificates or securities held by them respectively, is not material, as affecting the question of multifariousness. In *Turner* v. *Robinson*, 1 Sim. & S. 313, the bill was filed against the personal representatives of two decedents, and a demurrer for multifariousness was interposed. Vice-Chancellor LEACH said that, as the complainants' title to their shares of the two estates was derived under the same instrument, they were entitled to unite the accounts of both estates in the same suit; and that, therefore, the bill was not multifarious. In *Grant* v. *Insurance Co.*, 121 U. S. 105, 7 Sup. Ct. Rep. 841, a *cestui que trust* under 26 trust-deeds of land, executed to 5 different sets of trustees, to secure the payment of money, filed a bill for the sale of the land. Some of the deeds covered only a part of the land, and but one of them covered the whole. The bill alleged that the trustees named in 22 of the deeds declined to execute the trusts. The holders of judgments and mechanics' liens and purchasers of portions of the land were made defendants. Some of the trust-deeds did not specify any length of notice of the time and place of sale by advertisement. It was held that the bill was not multifarious. Counsel for the defendants urge that the test is whether one defense can be made to the entire bill, citing *Attorney General* v. *St. John's College*, 7 Sim. 241; and insist that none of the certificates mentioned in the bill of complaint are owned by the defendants jointly. Applying their own test thus suggested, the bill is not multifarious. There is but one defense, and that goes to the entire case. It is to answer the charges of fraud made by the complainant. If they are not sustained, the complainant has no equity, and the decree will be in favor of the defendants. If, therefore, the defendants will apply themselves to meeting and refuting those charges, they will have no occasion for any other or further or separate defense. The objection that the bill is multifarious is not well taken.

The demurrer for insufficiency and for want of equity must also be overruled. The bill sets forth a clear and flagrant case of fraud, which may be also criminal under the provisions of section 5209, Rev. St. U. S. The principles upon which the jurisdiction in equity in such a case is maintained are elementary. Equity alone can afford adequate and complete relief by a decree for the cancellation and delivery of the

fraudulent certificates and the surrender of the securities fraudulently obtained. These propositions are so plain and familiar as to need no verification by the citation of authorities. It is true that there is a remedy at law, as there is in every case of fraud ; but, the jurisdiction in equity and at law in relation to fraud being concurrent, a defendant has no right to complain if the complainant selects that tribunal where he can obtain the most ample and satisfactory relief.

The demurrer will be overruled, and the defendants allowed 20 days within which to prepare answers, and present them to the court, with application for leave to file.