MERCANTILE TRUST CO. v. MISSOURI, K. & T. RY. CO.

(Circuit Court, S. D. New York. January 11, 1898.)

1. EQUITY PLEADING—PLEA AND ANSWER.

Under rule 37, providing that no demurrer or plea shall be held bad on argument because the answer may extend to some part of the same matter covered by such demurrer or plea, pleas in bar and estoppel to the complaint will not be stricken out because they go to the same matter covered by the answer, when such pleas do not cover the whole bill, and, where covering the same ground as the answer, show different grounds of defense.

2. SAME—SCANDALOUS MATTER.

Parts of an answer, though immaterial as a defense, and scandalous in nature, will not on that account be suppressed, when intended to meet charges of bad faith made in the bill.

This was a suit in equity by the Mercantile Trust Company against the Missouri, Kansas & Texas Railway Company, praying an injunction, accounting, and other relief. The cause was heard on exceptions to the report of a master, to whom were referred the questions arising on certain motions made by the complainant to strike out parts of the answer and pleas.

F. K. Pendleton, for plaintiff.

Simon Sterne and E. Ellery Anderson, for defendant.

WHEELER, District Judge. The bill alleged:

"That on or about the 1st day of June, 1890, and at various dates thereafter, the said defendant railway company made, executed, and issued, and, for value, delivered to various persons and corporations, its 23,000 bonds, certified by your orator as trustee, numbered from 1 upwards, of which bonds, 17,000 were and are of the denomination of $1,000 each, and 6,000 were and are of the denomination of $500 each; amounting, in the aggregate of their principal sum, to $20,000,000. Each and all of said bonds are dated on the 1st day of June, 1890, mature 100 years after the date thereof, and bear interest at the rate of 4 per cent. per annum, payable semiannually, in gold coin of the United States, on the 1st days of February and August in each year." That to secure the payment of the bonds the defendant conveyed all its property to the plaintiff, by second mortgage, dated June 1, 1890, with this proviso in section 4: "But the covenant to pay the interest coupons belonging to said bonds maturing on the first of February, 1891, and each six months thereafter, to and including the coupons to mature August 1st, 1895, is subject to the following condition and agreement: The said company shall render each six months an account of the gross earnings, income, receipts, interest, dividends, or profits received from the said mortgaged property. It shall charge against such gross earnings all operating and maintenancing expenses, taxes, repairs, renewals, replacements, and insurance; and in each statement it shall charge six months' interest on the forty million dollars of first mortgage bonds. Such net earnings as shall remain after the charges above specified shall have been made shall be applied to the payment of the said coupons." And that "if it should, at any time during the said five years, be deemed expedient to apply any portion of the earnings of the said railway company to purposes other than those hereinbefore specified in this section, the said earnings may be so applied: provided, however, the written sanction of the party of the second part shall first be obtained." That the first coupons upon all of the bonds matured February 1, 1891, and the defendant neglected and refused to render any such account for the six months ending that day. "That, as your orator is informed and believes, the defendant railway company claims and represents that there was no net earnings derived from said mortgaged property, as defined by said section 4 of said mortgage, for the six months ending February 1, 1891; but, as your orator is informed and believes, and therefore now avers, the statements and representations of said defendant railway company in this behalf are wholly untrue and false, and, to the contrary thereof, your orator avers, upon its information and belief, derived as hereinafter stated, that net earnings from said mortgaged premises, as defined in said mortgage, for the said six months ending February 1, 1891, were made and received and existed to a very large sum, to wit, a sum in excess of the amount of interest represented by all of the coupons maturing upon that·date. That the defendant railway company has never sought or obtained, and your orator has never given, its sanction, written or otherwise, as contemplated in section 4. Your orator, however, avers, upon information and belief, that notwithstanding no such sanction or authorization has been sought or obtained from your orator, or given by it, a large proportion of the earnings for the period ending February 1, 1891, were applied to, and paid out for, expenditures other than those particularly defined in said section 4, * * * and that such excessive expenditures and unauthorized application of said earnings included amounts paid for new

side tracks, new buildings, real estate, fencing, equipment, and other purposes not included within the provisions of said section 4 as aforesaid, and that the earnings of said property during said period, so used and applied without authority in the provisions of said mortgage, and without such sanction of your orator, aggregated, as your orator is informed and believes, a sum upwards of $900,000. And your orator further avers, upon like information and belief, that the said defendant railway company has continued to apply, and threatens to further apply, large amounts of the earnings from the said mortgaged premises to like purposes, not included in the specific provisions of said section 4, and without the sanction of your orator as in said section contemplated. In this behalf your orator avers, upon information and belief, that the said defendant railway company has entered into agreements whereby it has undertaken to pay and guaranty the payment of the following obligations: (1) All of the interest upon two million five hundred thousand dollars of the first mortgage bonds of the Kansas City & Pacific Railway Company. (2) All of the principal and interest of the first mortgage bonds of the Sherman, Denison & Dallas Railway Company, the authorized issue of which is one million six hundred thousand dollars, and of which two hundred thousand dollars have been issued. (3) All of the principal and interest of the first mortgage bonds of the Dallas & Waco Railway Company, of which one million one hundred and seventy-three thousand dollars have been issued, out of a total authorized issue of two millions of dollars. (4) All of the principal and interest on one million of dollars of the first mortgage bonds of the Southwestern Coal & Improvement Company. That in the guaranties of said bonds of the Kansas City & Pacific Railway Company, the Sherman, Denison & Dallas Railway Company, and the Southwestern Coal & Improvement Company, the said Missouri, Kansas & Texas Railway Company assumed excessive obligations, in large part in the interest of its own officers and directors, who were personally and financially interested in the securities so guarantied, and in the properties embraced in said mortgages. That the said Missouri, Kansas & Texas Railway Company proposes and intends to apply the earnings and revenues from the property covered by said second mortgage to your orator as trustee to the payment and accomplishment of said guaranties, in preference to the payment of the coupons of the said second mortgage bonds." And that this suit is instituted in compliance with a request of bondholders.

The prayer is for an injunction restraining application of any net earnings:

"That a writ of permanent injunction may be issued, under the seal of this court, perpetually enjoining and restraining the defendant, the Missouri, Kansas & Texas Railway Company, its officers, agents, and attorneys, from applying (without the written sanction of your orator, as in said mortgage provided) any of the net earnings or income from the premises described in said second mortgage of the Missouri, Kansas & Texas Railway Company, as the same are therein defined, to any other or different use or purpose than the payment of the coupons and interest of said second mortgage bonds as the same have matured or may mature, until said coupons have been paid in full from such net earnings derived during the six-months periods to which such coupons, respectively, apply,"—for an account of the earnings for the six months ending February 1, 1891, and payment over of the net earnings, and for further relief.

The defendant pleaded that, in a suit by the plaintiff against the defendant in the circuit court of the United States for the district of Kansas, the property mortgaged was in the hands of receivers from November 1, 1888, to July 1, 1891, who operated and administered the property, and rendered full account thereof, which was approved and confirmed by the court, in bar and as an estoppel, and as accounts stated, and res adjudicata between the plaintiff and defendant. 41 Fed. 8. "And, for an answer to such parts of the said bill as are not pleaded to and in support thereof," the defendant admits the mortgage, as made pursuant to a re-

organization agreement entered into during the receivership; sets up the settlement and confirmation of the accounts; and "avers that from and by the accounts aforesaid, so rendered, approved, confirmed, and accepted as aforesaid, which said accounts are, as between the complainant and defendant herein, accounts stated, it conclusively appears that there were no net earnings, as in point of fact there were none, derived from the property of the defendant for the period of six months prior to the 1st day of February, 1891, and applicable conformably to the terms and conditions of the mortgage of June 1, 1890"; and "denies that there was or existed any sum whatsoever in excess of the amount of absolute fixed charge, or any sum whatsoever applicable to the payment, in whole or in part, of the coupons of the bonds secured by the said mortgage to the complainant, maturing either on the 1st day of February, 1891, or the 1st day of August, 1891"; and "admits that no application has been made by the defendant, or upon its behalf, to the complainant, for any application of its earnings, other than as authorized by the mortgage of June 1, 1890, but the defendant denies that it has ever made, or has in contemplation the making of, any application of any of its said earnings in any manner inconsistent with the requirements, covenants, and conditions of the said mortgage appended to the complaint"; admits the guaranties, but "denies that it proposes or intends to apply any of the earnings and revenues of its property, except in good faith, and in all respects in conformity with the covenants and obligations imposed upon it in and by the said mortgage of June 1, 1890"; avers complicity of the officers of the plaintiff with others in attempting to injure the defendant; and "avers, and charges the fact to be, that this bill is filed, and this suit brought and prosecuted, not for the purpose of protecting any of the interests of the bondholders secured by the said mortgage of June 1, 1890, to the complainant, but that the filing of the said bill, and the prosecution of this litigation, is to their detriment and injury, and for the purpose of impeding and interfering with the business management of the property of the defendant."

The plaintiff moved to strike out, in substance, so much of the answer as set up complicity of officers, and bad motives in bringing the suit, and moved "for an order striking out the pleas heretofore filed by the defendant to the bill of complaint herein, upon the ground that the answer of the defendant to the said bill of complaint covers and extends to all of the matters embraced in said pleas, and thereby constitutes a waiver of said pleas." On motion of plaintiff, and consent of defendant, it was ordered that it be referred to "one of the masters of this court, to hear and report, with his conclusions and opinion, in respect to all the matters embraced in and covered by the said motions and exceptions of the complainant." The master has reported that in his opinion the pleas should be stricken out, because waived by the answer, and that those parts of the answer should be stricken out as scandalous or immaterial, and not constituting any defenses. Exceptions to this report have now been heard.

These somewhat lengthy extracts from the pleadings show clear-

ly that the pleas do not profess to, and do not in fact, cover the whole bill. They apply to so much of the claim for net earnings for the six months next before February 1, 1891, as the possession and accounting of the receivers would meet, but leave the allegation of net earnings in fact applicable to the coupons of that period, and those charging an intention to divert such earnings in the future, wholly unanswered. The answer denies that there were in fact such net earnings so applicable during that period, and states the receivership at the suit of the plaintiff against the defendant covering that period, and the settlement of the accounts of the receivers, including the earnings in that suit, to show why there were in fact no net earnings to be accounted for here. Perhaps the receivership and accounting would be available, under the answer, as a defense in an accounting here for any period covered by them, as evidence showing nothing to account for, and in that view the answer may be said to cover the same ground as the pleas; but they would not be available to show that no accounting for that period should be had, and in that view the answer would not cover the whole ground of the plea. They are merely included in statements tending to different grounds of defense. Formerly, as pleas raise the question whether the defendant ought to answer the bill, or a part of it pleaded to, an answer to the bill, or to that part, was deemed to be a waiver of the pleas. Stearns v. Page, 1 Story, 204, Fed. Cas. No. 13,339. Equity rule 37 changed this in the federal courts. As to the origin and effect of that rule, Judge Blatchford, in Hayes v. Dayton, 18 Blatchf. 420, 8 Fed. 702, said:

"The plaintiff contends that the putting in of an answer to the whole bill is a waiver of the demurrer. Rule 32 in equity permits a demurrer to a part of a bill, a plea to a part, and an answer as to the residue. If, impliedly, that rule forbids a demurrer to the whole bill, and at the same time an answer to the whole bill, the plaintiff's remedy is by moving to strike out either the answer or the demurrer, or to compel the defendant to elect which he will abide by. By going to argument on the demurrer the plaintiff waives the benefit of the objection now taken, if otherwise he would have it. Moreover, rule 37 in equity provides that 'no demurrer or plea shall be held bad and overruled upon argument, only because the answer of the defendant may extend to some part of the same matter as may be covered by such demurrer or plea.' This rule was first made in March, 1842, to take effect August 1, 1842. 17 Pet. lxvii. There was no such rule in the prior rules of March, 1822 (7 Wheat. v.), although rule 18 in such prior rules was the same as the above present rule 32. Under the rules of 1822, not only had it been held (Ferguson v. O'Harra, Pet. C. C. 493, Fed. Cas. No. 4,740) that where there was a plea going to the whole bill, and also an answer to the whole bill, the court would, on the plaintiff's motion, disallow the plea on the ground of its being overruled by the answer, but Judge Story had held in 1840, in Stearns v. Page, 1 Story, 204, Fed. Cas. No. 13,339, that where a plea stated a ground why the defendant should not go into a full defense, and yet the defendant answered, putting in a full defense, it would be held on the argument of the plea that the answer overruled the plea. Then rule 37 was made. It applies to the present case. The demurrer is allowed, with costs."

This is not varied by what was said by him on the same subject, and done, in Grant v. Insurance Co., 121 U. S. 105, 7 Sup. Ct. 841, except, perhaps, "where the answer extends to the whole of the matter covered by the plea"; nor by Huntington v. Laidley,

79 Fed. 865. The "matter" of these pleas is the statement of the same accounts between the same parties for the same time, and a judicial confirmation of them, as a bar to a restatement; and to that, as an effect, the answer does not and cannot extend. The pleas, therefore, should not be stricken out.

As defenses, strictly, the parts of the answer found by the master to be immaterial and scandalous are so; and, if that were all, they should be suppressed. But the bill itself brings forward the motives of the suit, and charges bad motives to the officers of the defendant. The plaintiff has no right to say that its allegations of these things shall not be met. Some of the statements in the answer go further, perhaps, than was justifiable; but as the master divided them by the line of strict defenses, and that cannot be followed, no attempt to distinguish them on any other line is made here. Exceptions to report sustained, and motion to strike out pleas and exceptions to answer overruled.