# WOOD *v.* GRAYSON.

EQUITY PRACTICE; RECEIVERS PENDENTE LITE.

1. Where fraud, insolvency, etc., are clearly deducible from specific facts alleged in a bill in equity, it is immaterial that they are not expressly charged.

2. Where the power to appoint receivers *pendente lite* exists, no positive rule can be laid down as to when the court will exercise the power; but in all such cases the court must exercise its sound discretion under all of the circumstances.

3. The impropriety of an order appointing receivers *pendente lite* must be made quite clear .to justify an appellate court in setting it aside; *following* Clark v. Bradley Co., 6 App. D. C. 437.

4. An order appointing receivers *pendente lite* in a suit in equity by the holders of a second deed of trust upon an apartment house, *affirmed* where it appeared, among other things, that default had been made in the payment of interest upon both first and . second trusts; that the maker of the deed of trust notes was insolvent; that the property, if sold at a threatened sale under the first trust, would bring insufficient to pay both trusts; that the persons in possession and claiming to be the equitable owners of the property were seeking to force a sale under the first trust so as to destroy the value of the second trust, although the holders of the latter trust had offered, if the rents in their hands were insufficient to pay the accrued interest on the first trust, to advance the remainder and stop the sale, but such offer had been refused ; and other fraudulent conduct on the part of those in possession and collecting the rents.

No. 942. Submitted January 12, 1900. Decided March 6, 1900.

HEARING on an appeal by the defendants from an order of the Supreme Court of the District of Columbia appointing receivers *pendente lite* in a suit in equity for the appointment of a receiver of rents of certain real estate, to enjoin a sale of the property and for other relief.  *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from an interlocutory order of the Supreme Court of the District appointing receivers for certain property called the Victoria Flats.

The order was made on a bill filed by David C. Grayson, trustee, and a number of others as beneficiaries, in a trust deed covering said property, against Frank I. Wood, H. Maurice Talbott, Bernard A. Duke and Nicholas T. Haller, as claimants of the equitable title, and B. H. Warner and Louis D. Wine, trustees, and others as trustees and beneficiaries in certain prior incumbrances.

The following facts are stated substantially in the bill :

January 13, 1897, Alice S. Hill conveyed to Nicholas T. Haller lots 1 and 2, block 45, of W. C. Hill's subdivision of the middle grounds of Columbian University. Each lot has a frontage of 75 feet on Fourteenth street, and extends back 190 feet parallel with Welling street, on which lot 1 abuts.

Haller, in execution of a scheme to build the Victoria Flats upon said lots, obtained a loan of $75,000 for five years, with interest at the rate of 6 per cent., payable semi-annually.

On January 22, 1897, to secure this loan, he conveyed to Warner and Wine, trustees, a part of the ground comprised in said lots having a frontage of 120 feet on Fourteenth and of 124 feet on Welling street.

On the same day he conveyed to trustees the remaining portions of lots 1 and 2 to secure the payment of $12,330, evidenced by notes payable in one, two and three years.

Haller proceeded to erect his building upon the parts of the lots conveyed in the first deed of trust with a frontage of 100 feet on Fourteenth street and a depth of 87 feet on Welling. By reason of certain parking reservations along the said streets, unknown to Haller when he purchased, and when his plans were made, he was unable to leave a contemplated strip on the north and west of the same, within the boundaries specified in the deed of trust to secure his building loan. The walls, in fact, extend one or more inches beyond said boundaries, and the eaves overhang the same. Porches were also built on both sides

extending 6 feet beyond said lines, and very many windows in said walls necessary for light and air open on the adjacent portions of the lots not embraced in the said trust. The possession of a strip of ten feet of said remaining ground adjoining the south side and west end of the building is necessary to its use and, if the same shall be built upon, will greatly impair its value. To provide against this contingency, Haller entered into an agreement with the trustees and the beneficiaries of the deed of trust aforesaid covering the remainder of the lots, that upon payment by him of $4,000 of said indebtedness they would release to him a strip of land ten feet wide adjoining said building on the south and west sides thereof.

This release was not obtained. Haller became seriously involved and was unable to pay all of the debts contracted for building material. Mechanics' liens to the extent of $30,087.69 were about to be filed.

To prevent this, and to secure the said sum and a further indebtedness of $10,350, he, on December 20, 1898, conveyed the same portions of the lots as described in the building loan trust deed aforesaid, to David C. Grayson and John C. Heald, trustees.

This instrument was not made an exhibit in the pleadings, but the effect of an important provision thereof, together with certain proceedings thereunder, appear as follows in a paragraph of the bill:

"6. By the said deed of trust to the complainant Grayson and the defendant Heald, and for the better security of the beneficiaries thereunder, it was further provided that the said trustees under the said deed to Grayson and Heald should collect the rents and profits of the said Victoria Flats building over and above the amounts necessary to pay the interest on the debt secured by the first trust on the said property, and taxes and insurance, and the repairs and running expenses of the said building, so long as any part of the indebtedness secured by the said second trust should

remain due and unpaid, and to apply the rents and profits as frequently as practicable on the notes secured by the said second deed of trust *pro-rata* until all the indebtedness thereby secured should have been fully paid, and, pursuant to the said provision of the said deed of trust, the said property was placed in the hands of the firm of B. H. Warner & Co. to collect the said rents, issues, and profits, and pay the interest on the said first trust, together with the taxes, insurance, repairs, etc., and to account to the said trustees, Grayson and Heald, for the surplus rents, under which arrangement the surplus rents and profits of the said building were paid over to the said Grayson and Heald and applied toward payment of the interest on the promissory notes secured by the second deed of trust until about the month of May, 1899, when, upon the representation that the expense of real estate agents' commissions would thereby be saved, and that the income of the said premises would otherwise be increased, the said trustees, Grayson and Heald, acquiesced in permitting the defendant Frank I. Wood, who had become interested in the property, as hereinafter shown, to collect the said rents and profits, it being understood that they would be applied as theretofore to protecting the property against sale under the first trust by payment of the interest, taxes, insurance, and other necessary charges, and that any and all surplus of said rents above the said charges would be applied to the promissory note, secured by the second trust."

Haller, "becoming further embarrassed, and being threatened with judgments then about to be recovered against him on account of other transactions," on December 20, 1897, conveyed to Holt and Sebring, trustees, all of the said lots 1 and 2, not included in the trust deeds to Warner and Wine and Grayson and Heald, to secure notes payable on their face to William O. Roome and William J. McClure, who are made defendants, in the sum of $34,000; which said notes were never in fact delivered, and the transaction

16 Ct. App.—13

was wholly fictitious.  This was done upon the advice and by the direction of Wood.

On March 31, 1898, and again by direction of Wood, Haller conveyed to defendant Duke, upon an expressed consideration of $10, the lots constituting the Victoria Flats property as aforesaid, and also the strip of ten feet adjoining the same and heretofore referred to.  Duke, it is alleged, is an irresponsible person, and the conveyance was made to him for the benefit of Wood and Talbott, who had in some manner become interested in the property.

A claim is set up that the said strip is absolutely necessary to the value of the building; that the trust deed to Grayson was accepted in the belief, from the acts of Haller, that the same had become a part of the flats property— Haller having extended his building upon it and led all persons to believe that it was a part of the same property; and that Duke, Wood and Talbott acquired their rights subject to said equity.

The bill then further charges that Wood and Talbott, after the execution of the trust deed by Haller to Grayson and Heald, attempted to buy up the claims secured therein upon offers of 20 per cent. of their face value, and upon failure declared that they would see that the holders " got nothing."  Failing in this scheme, Wood procured from Haller, on July 31, 1898, a conveyance in fee of the remainder of the lots outside of the building save and except the said strip that had been previously conveyed to Duke.

On March 13, 1899, Wood procured a conveyance of the said strip from Duke.  This was done to separate this strip from the building and to cause a sacrifice of the same upon a sale under the trust deeds incumbering it.  Wood then next procured a release to himself, by Holt and Sebring, trustees, of the fictitious incumbrance before referred to. The said strip has never been released from the original trust deed covering the whole of the lots outside the flats, but the notes secured thereby, to the extent of $4,000, have

been paid through some arrangement by Wood and Talbott with the National Bank of Gaithersburg; and Wood and Talbott claim to be the owners of all of said notes.

Wood and Talbott failed to pay the interest on the trust deed to secure the building loan, and have thereby caused the trustees therein to advertise the property for sale on September 7, 1899.

Grayson, learning this, requested Wood to pay the same out of the rents received by him, and offered, if there was not sufficient thereof, to advance the remainder and stop the sale. Wood refused, and then and there told Grayson that he and Talbott, by reason of their ownership of the "strip," held "the key to the situation," and were willing that the flats should be sold.

Further prosecuting his attempt to have the flats property sold under conditions that would prevent its bringing more than the amount of the first trust, and enable him and Talbott to obtain the property discharged of complainants' lien, the said Wood, on September 2, 1899, filed a bill against Bernard A. Duke, alleging the fact that the flats encroach upon the strip and impair its value, and praying to have the nuisances thereby created abated.

The prayers of the bill are for appointment of a receiver of the rents of the flats; for restraint of the advertised sale; for the establishment of their equitable liens upon the said strip of said lots; and for a decree declaring an easement for light and air in said strip, etc.

Affidavits were filed tending to support the allegations of the bill, in respect of the demand of Grayson for the payment of the interest, and his offer to advance any sum in addition that might be necessary, the attempt of Wood to purchase at 20 per cent. of face value claims secured by the deed of trust to Grayson, and the threat that the owners of said claim should never receive a dollar thereon.

The sworn response of Wood to the rule to show cause states the following facts substantially, and beyond these

and inferences deducible therefrom, does not deny the allegations of the bill.

The conveyance by Haller to Duke of the flats property and adjoining strip, whilst absolute in form, was in trust for Wood and Haller in equal shares as tenants in common. Thereafter Haller conveyed his said interest to said H. Maurice Talbott.

That after Talbott became part owner he and Wood decided that it would be to their interest to collect the rents of the flats, and commenced to do so May 2, 1899; and they say that they had a right to do this without the consent of Grayson and Heald.

The provision in the trust of the latter is admitted to be substantially as alleged in the bill, but the legal effect thereof, as claimed in the bill, is denied. That the rents of the flats were reduced on account of the dull summer season, and when the interest due on the first trust deed matured July 22, 1899, the respondents had in hand only $1,400, after deducting running expenses—a sum insufficient to meet the payment due, which amounted to $2,250.

The demand of Grayson is admitted, but was refused because Grayson's right, as claimed under the trust deed, is denied, and because Grayson refused to state what disposition he would make of said sum if the trustees Warner and Wine should decline to receive a part payment.

The charge that he withheld the money to cause a sale of the flats property is denied; and a willingness is declared to abide the decision of the court whether the net rents then in hand, amounting to $2,375 should be paid on said interest, without deduction for accrued taxes. The subjection of the adjoining strip to the easement claimed is denied, and the conveyance of the same to Duke, for the benefit of Wood and Talbott, was not made to include it in the flats property.

The agreement between Haller and the beneficiaries of the first trust upon the ground outside and surrounding the

flats, for the release of the lien upon the "strip" upon the payment of $4,000, as alleged in the bill, is denied; but it is admitted that the trustee therein wrote to Haller that he would release if $4,000 should be paid prior to March 10, 1898.

Haller made no such payment, and after March 10, 1898, Wood and Talbott took up two of the notes, for $2,000 each, as set forth in the bill; but said notes have not been paid, and the trust remains as originally created.

Upon hearing, after this answer had been made, the court made the order appointing receivers for the property, and restraining the advertised sale.    Warner and Wine, trustees, were appointed receivers.

Wood, Talbott and Duke have joined in the appeal from this order.

*Messrs. Eugene Carusi & Sons* and *Mr. John Ridout* for the appellants:

1. Where it appears that the complainants can not have a final decree, a receiver *pendente lite* ought not to be appointed.    *Owen* v. *Homan,* 13 McN. & S. 412; *Bainbrigge* v. *Baddeley,* 3 McN. & S. 420; *Greggory* v. *Greggory,* 33 N. Y. Sup. 39; *Cofer* v. *Echerson,* 6 Iowa, 525 ; *Wilkinson* v. *Dobbie,* 12 Blatchf. 300.

2. Only where the physical integrity of the security is in imminent danger of waste or depreciation, the mortgagor insolvent, or, when rents have been pledged as additional security, the latter are being dissipated or misapplied, should a receiver be appointed.    Even if the rents and profits had been expressly included in the deed of trust to Warner and Wine, the latter could only have had a receiver of them appointed upon proof of the insolvency of the debtor, the mortgagor.    *Grant* v. *Insurance Co.,* 121 U. S. 105 ; *Freedman Co.* v. *Shepherd,* 127 U. S. 502 ; *Shepherd* v. *Pepper,* 133 U. S. 652 ; *Trust Co.* v. *Ice Co.,* 14 App. D. C. 312 ; *Cortelyou* v. *Hathaway,* 64 Am. Dec. 498 ; *Mayo* v. *McPhaul,* 71 Ga.

758; *Venable* v. *Smith*, 98 N. C. 523; *Chase's Case*, 1 Bland, 213. To justify the appointment of a receiver it is not enough to show that the property is in danger. It must also be shown that the party in possession is not responsible. *Clark* v. *Ridgeley*, 1 Md. Ch. 70; *Burt* v. *Burt*, 41 N. Y. 46.

3. The appointment of a receiver was oppressive and unnecessary. Less stringent methods of protection should have been adopted by the court. *Speights* v. *Peters*, 9 Gill (Md.), 472; *Matter of Cohen*, 3 Ch. (Md.), 201; *Blondheim* v. *Moore*, 11 Md. 365; *Furlong* v. *Miller*, 3 Md. 99; *Haight* v. *Burr*, 19 Md. 130; *Brick Co.* v. *Robinson*, 55 Md. 418; *Insurance Co.* v. *Grant*, 3 MacA. 220. A proper order in the case might have been one requiring Wood to give security to account for the rents and profits as the court might direct. *Insurance Co.* v. *Stebbins*, 8 Paige, 567.

*Mr. J. J. Darlington* and *Mr. Jesse E. Potbury* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

The determination of the questions raised by the allegations of the bill and of the response to the rule to show cause, respecting the equitable rights, in relation to the "ten foot strip," of the beneficiaries of the second trust upon the flats property in which Grayson is trustee, will probably become a matter of very great importance in the settlement of the final decree in this litigation, and it must be deferred until that time.

The sole question necessarily involved in this appeal is the propriety of the order appointing receivers for the property *pendente lite*, as between the claimants of the equitable title and the right of possession, on the one hand, and the rights of the beneficiaries of the second trust, on the other. And the only consideration that can be given to the uses of the strip, and the several conveyances relating to it, is in respect of their weight as circumstances, in connection with the general conduct of the appellants, tending to show that

they were engaged in a reprehensible scheme to force the public sale of the flats property, under the first deed of trust, at a great disadvantage, and thereby destroy the value of the second incumbrance represented by the trustee, Grayson.

It is to be inferred from the general tenor of the bill, though there is no express allegation, that the first deed of trust requires the application of the rents of the flats property to the payment of taxes, insurance and accrued interest; for it is alleged that the second trust to Grayson covers the rents, and provides that he shall, as trustee, collect said rents over and above the amounts necessary to pay the said charges for taxes and insurance, necessary expenses, and on account of interest on the said first trust.

If the effect of the second trust was to charge the rents with the payments aforesaid, and to create an equitable lien in favor of its own beneficiaries upon the surplus that might exist, the appointment of the receivers would, apparently, be justified by the exigencies of the case.

It is true, as contended, that there is no allegation, in express terms, that Haller is insolvent, that the property is not of sufficient value to insure sale, under auspicious circumstances, for the amounts secured by both trusts, and that Wood and Talbott have been guilty of fraud in mismanaging the property and diverting the rents. If, however, these necessary conclusions are clearly deducible from the specific facts relating to each that are set out in the bill, nothing more is required.   5 Encyc. Pl. & Pr. 567; 9 Idem, 688, 694.

In this view, the allegations of the bill, as shown in the preliminary statement, are ample.   Haller's insolvency, as also the apparent inadequacy of the security of the *corpus* of the flats property, arising in part from the insufficiency of its rents to meet the interest on the first trust, are inevitable inferences from those allegations; and they remain unchallenged, either directly or indirectly, by the answer.

As regards the conduct of Wood and Talbott, who claim

to hold the equitable title to the property subject to the two trust deeds, the allegations are likewise sufficient.

The secret conveyances of the property in the parcels, as alleged; the trust deed purporting to secure an indebtedness of $34,000 that did not exist; the feigned suit with their secret trustee Duke, to abate the nuisances occasioned by the encroachment of the flats building upon the adjacent strip; the attempt to purchase the claims of the second trust for 20 per cent. of their face value; the threat made to prevent the realization of anything on their account; the manner in which they came into the possession of the rents of the flats, and their refusal to pay the surplus thereof upon the interest accruing due upon the first trust, even after Grayson had offered to advance whatever additional sum might be necessary to meet the entire instalment, all tend to establish the existence of a scheme on their part to force the sale of the property, under the first trust, under such circumstances as would seriously endanger the security of the second—a scheme which it would be superfluous to characterize with an epithet.

Whether, however, the second trust deed does in fact subject the income of the flats building to its lien, must depend upon the construction of the terms of that instrument. As it is not made an exhibit in the case, and all the information we have of its purported effect is that claimed for it in the ·bill, we prefer, especially on this intermediate appeal, not to rest an approval of the order appointing the receivers upon that ground.

Leaving out of consideration, then, the question of the equitable lien upon the income of the flats buildings, that was being withheld by the equitable owners in possession, we pass to the second ground upon which the appointment of the receivers is supported.

Default had been made in the payment of interest upon both trusts, and it seems quite clear that the facts heretofore stated respecting the insufficiency of the security and the

conduct of the appellants in possession were ample to confer jurisdiction upon the court to appoint receivers if deemed necessary for the protection of the interests of the beneficiaries of the second trust. *Sage* v. *Memphis, etc., RR. Co.,* 125 U. S. 361, 375; *Grant* v. *Phoenix Ins. Co.,* 121 U. S. 105, 117; *Kountze* v. *Omaha Hotel Co.,* 107 U. S. 378, 395.

It is hardly necessary to say that the possession of property by one claiming title thereto ought not to be lightly taken away, and that the power to appoint a receiver is one not to be exercised except with great circumspection. But where the power exists, no positive rule can be laid down as to whether the court will or will not interfere with possession, *pendente lite,* through the appointment of a receiver. In all such cases the court must of necessity exercise a sound discretion to be governed by all the circumstances of the particular case.

Again, when this discretion has been exercised and the receiver appointed, the impropriety of the order should be made quite clear to justify an appellate court in setting it aside. *Clark* v. *Bradley Co.,* 6 App. D. C. 437, 444.

As this is an appeal from an interlocutory order, and the whole case may come before us again with final answer and proofs, we have attempted to confine our discussion of it within the bounds necessary to the elucidation of the questions actually involved, namely, the power of the court to appoint, and the soundness of the discretion exercised in appointing receivers to administer the property pending the litigation.

We have found no abuse of discretion in the order; on the contrary, it seems to have been providently made. It will therefore be affirmed with costs, and the cause will be remanded for further proceedings as the parties may be advised. It is so ordered.                         *Affirmed.*