*In re* DEXTERVILLE MANUF'G & BOOM CO., SCRANTON MANUF'G & BOOM CO., and another, *v.* CASE, Receiver, etc.

*(Circuit Court, E. D. Wisconsin.   December 10, 1880.)*

1. RECEIVER — CLAIM FOR DAMAGES AGAINST A RAILROAD COMPANY — COMPANY IN DEFAULT FOR INTEREST.—The net earnings of a railroad, while in the possession of a receiver appointed by the court, pending the foreclosure of certain mortgages upon the property, cannot be applied to the payment of claims for damages which accrued during the operation of the road by the company, although such company was then in default for the non-payment of interest upon the mortgage bonds.

Demurrer.

*Geo. H. Noyes* and *G. C. Prentiss*, for petitioners.

*E. C. & W. C. Larned*, for receiver.

DYER, D. J. The petitioners above named have presented petitions for the allowance of claims to a large amount against the receiver of the Green Bay & Minnesota Railroad, who is operating the road under the direction of this court, pending the foreclosure of certain mortgages upon the property, which demands are for loss and damages claimed to have been sustained by the petitioners in the destruction of timber and cranberry marsh along the line of the road by fire, alleged to have been set by sparks escaping from defective locomotives. By suitable and separate allegations it is charged that the fires which caused the damage occurred on different days in different years, and it is thus made to appear in each of the petitions that one of these fires occurred on the seventh day of September, 1877, which was more than four months before a foreclosure of the mortgages in suit was commenced, and before a receiver was appointed. To such parts of the petitions as thus allege, as causes of action against the receiver, loss and damage by fire while the road was yet being operated by the railroad company, and before it passed into his hands, the receiver has demurred, and the demurrer raises the question whether such claims can be allowed or entertained against him or the property which he has in charge for the bondholders, or against any party other than the railroad company by whose negligence it is alleged the loss and damage were occasioned.

In *Hale* v. *Frost*, 99 U. S. 389, it was held that the net earnings of a railroad while it is in possession of a receiver, appointed by the court, may be applied to the payment of claims having superior equities to that of the bondholders. To sustain the claims in question, it is therefore necessary that some equity be found in favor of the petitioners and superior to that of the bondholders, upon which to base their allowance. And the supposed equity urged is that the fire in question occurred after default on the part of the railroad company in payment of the mortgage debt or interest; that thereafter the company operated the road as the agent or trustee in equity of the bondholders, and that the alleged lia-

bility sought to be enforced in the present proceeding arose from such operation of the road and as an incident thereto; that, therefore, it may be put under the head of operating expenses, and so acquire rank as a claim having equities enforceable against the net earnings of the road in the hands of the receiver. There is some plausibility in the argument, but it is unsound. No relation of principal and agent, either in law or equity, can be implied from the mere fact that the railroad company continued to operate the road after it was in default in payment of the mortgage debt, nor from the further fact that the bondholders did not take possession of the property after such default, nor from both facts combined. The mortgages gave to the mortgagees the right to take possession after default, but they were not obliged to do so, nor was it necessary that they should take possession in order to avoid such a liability as is here claimed. The railroad company was operating the road when the alleged loss and damage occurred. The negligence of the company, if there was negligence at all, occasioned the loss. For that negligence it alone was responsible. To sustain the position taken by the petitioners, it must be held that the bondholders at least impliedly assumed liability for the negligence of the railroad company, and that by operation of law their mortgage security was subordinated to claims of the character of these. I cannot so hold. The alleged causes of action accrued after the company had given mortgages upon all its property, which were then subsisting liens, and before the receiver was appointed. It can make no difference that they accrued after the company was in default in payment of interest on its bonds. The road was still being operated by the company, and whatever liability existed must have been one against the company alone. In no just or proper sense could such claims as these be considered as part of the operating expenses upon which the petitioners could assert a right prior to that of the mortgagees. They are wholly unlike claims for supplies, new equipment, right of way, and new construction, or any claim falling legitimately under the head of operating expenses, which the courts sometimes order paid from net earnings in

the hands of a receiver as having equities superior to those of bondholders. If such claims as are here in question could be allowed, there would seem hardly to be a limit to the allowance of demands which it might be as forcibly urged were superior in their equities to those of the secured creditors, but which could not be allowed upon any sound principle of equity, nor without substantially impairing and perhaps destroying an otherwise valuable security.

The demurrer to such parts of the petitions as state causes of action against the railroad company accruing prior to the appointment of the receiver, is sustained. And it is not improper to add that this ruling is supported by the practice of the learned circuit judge of this circuit, who has uniformly disallowed claims against a receiver of the character of these.