CENTRAL TRUST CO. OF NEW YORK v. CHATTANOOGA, R. & C. R.
R. et al. (OWENS et al., Interveners).

(Circuit Court, N. D. Georgia. September 14, 1898.)

No. 736.

1. RAILROAD MORTGAGE—ROAD SUBSEQUENTLY BUILT.

A railroad mortgage, in terms covering the entire line of road from one terminus to the other, is valid as to the entire line, though a portion of it was unbuilt when the mortgage was executed.

2. SAME—PRIORITY OF LIENS—EARNINGS UNDER RECEIVERSHIP.

Though a railroad trust deed does not in express terms cover the income or earnings of the road, a provision authorizing the trustee, on default, to take possession of and operate the road until sale, operates as an appropriation of the income during that time to the mortgage debt, and earnings under a receiver appointed by the court pending foreclosure, at the instance of the trustee, must be applied in payment of a deficiency judgment rendered in favor of the trustee after sale of the road in preference to general judgments against the mortgagor, which, though prior in time to the deficiency judgment, are subsequent to the mortgage.

In this suit a trust deed executed by defendant company was foreclosed and its road sold. The present hearing is upon demurrer to a petition of intervention filed by Owens and others, general judgment creditors of defendant company, asking payment of their judgments from the earnings of the road during the receivership, in preference to the deficiency judgment in favor of the mortgage bondholders.

Halstead Smith and Dean & Dean, for interveners.
King & Spaulding, for defendant.

NEWMAN, District Judge. In disposing of this matter, it may be proper to mention, first, that, in 1892, the Chattanooga, Rome & Columbus Railroad, as to which this proceeding relates, was a part of the Central of Georgia System of railroads; that is, it was a part of the Savannah & Western System, which had become a part of the Central System. In 1892 all of the roads comprising the Central System were placed in the hands of a receiver, by order of the United States circuit court for the Southern division of Georgia. Mr. H. M. Comer, after some changes, ultimately became receiver under this first bill. Subsequently, in 1893, under a bill filed to foreclose the Savannah & Western bonds, Comer and R. J. Lowry were appointed receivers of the Savannah & Western. In December, 1893, a bill was filed by the Central Trust Company, trustee for certain still underlying bonds of the Chattanooga, Rome & Columbus Railroad Company, to foreclose the mortgage or trust deed. Under this last bill, Comer and Lowry having asked to be relieved as to this property, a separate receiver, E. E. Jones, was appointed by this court, in February, 1894. There was a sale of the Chattanooga, Rome & Columbus Railroad under this last foreclosure, and it was purchased by a committee, representing the bondholders. Certain judgment creditors of the Chattanooga, Rome & Columbus Railroad now come into court, by intervening petitions, and ask that the proceeds of the sale of the road be paid to them in preference to the bondholders.

These petitioners have general judgments, obtained in 1891, 1892, 1893, and 1894, of subsequent date to the trust deed, which was made in 1887. They are prior in date, however, to the deficiency judgment given the trust company for the amount due on the bonds over and above the amount realized from the sale of the road. They ask to be paid out of the proceeds of the sale of the road, in preference to the bondholders, for two reasons: First, because a considerable part of the road was not constructed at the time the trust deed was executed; and, second, because they claim that the income of the road is not covered by the trust deed.

As to the first contention, it is sufficient to say that by the terms of the trust deed it covers the line of railway commencing at Chattanooga, extending through certain counties in Tennessee, certain counties in Georgia, and into Carroll county, Ga. The supreme court of Georgia, in the case of Georgia S. & F. R. Co. v. Mercantile Trust & Deposit Co., 94 Ga. 306, 21 S. E. 701, uses the following language:

"As a practical proposition, it is well known that most, if not all, of the railroads of any length in the United States, which have been built for years past, have been constructed by issuing, in advance, bonds upon their entire line, including the unbuilt portion as well as those already constructed, with mortgages to secure the bonds covering the whole. If a de facto railroad company is a corporation for any purpose at all, it ought, on general principles, to have the power to mortgage 'future-acquired property,' and this seems to be the doctrine very generally recognized by the courts. Upon this question, see Wright v. Bircher's Ex'r, 72 Mo. 179; City of Quincy v. Chicago, B. & Q. R. Co., 94 Ill. 537; Wade v. Railroad Co., 149 U. S. 327, 13 Sup. Ct. 892; Williams v. Winsor, 12 R. I. 9; Branch v. Atlantic & G. R. Co., 3 Woods, 630, Fed. Cas. No. 1,807; Seymour v. Canandaigua & N. F. R. Co., 25 Barb. 284; Holroyd v. Marshall, 10 H. L. Cas. 191. And these citations might be indefinitely multiplied."

The foregoing, from the supreme court of this state, is in accordance with the general rule on this subject, and is sufficient to dispose of the first contention of interveners, without quoting further authority.

The other ground on which interveners place their claim of preference is one of more difficulty. The intervention sets up that certain net income was derived from the operation of the road by Jones, as receiver, and, the demurrer on which the case is now heard admitting this to be true, it must be determined whether, as to this income, general judgment creditors should be preferred to the bondholders. The legislature of the state, in 1881, authorized this railroad company to execute a trust deed or mortgage on all its property, without specifying income. Acts 1881, p. 246. In 1886 it was authorized to issue income bonds, and to secure the same by mortgage of its property and franchise, or by pledging the income of its railroad, either or both, as the road company might deem proper. Acts 1886, p. 139. The income of the road is not covered in express terms by the trust deed. It contains, however, the following provision: "Until default shall be made in the payment of principal or interest of the said bonds, * * * the party of the first part [grantor] shall have the right to possess and enjoy the premises and property heretofore described, and to receive and take and use all told income, earnings, and profits thereof." Afterwards, in that part of the trust deed relating to the power of the trustee in the event of default for three months in the

payment of interest, trustee is "authorized and empowered and directed, on request of any bondholder, to enter into and upon, and take and hold possession of, said railroad, and all its property, rights, privileges, and franchises, as aforesaid, and, until the day of sale thereof be fixed, to maintain and operate the same." It will be seen, therefore, that the right of the railroad company to receive its income is restricted and limited to and during the time that it shall comply with this contract as to payment of interest, etc. Upon default of the railroad company, its right to receive the income ceases, and the trustee may enter and maintain and operate the railroad, and until the day of sale have such possession, with the railroad's rights, privileges, and franchises. By section 2723 of the Civil Code of Georgia, "a mortgage  *   *   * is only a security for a debt, and passes no title." It has been held, however, by the supreme court of the state, that this does not prevent the conveyance of the title as security for a debt. In Biggers v. Bird, 55 Ga. 650, it is said:

"Surely, there is no law against having the legal title in pledge for a debt, —against passing that kind of title into the creditor by a bona fide conveyance, to abide in him, with all the incidents of ownership, until the debt is paid. If the parties wish to do such a thing, contract to do it, and proceed to carry their purpose into effect, we are aware of no obstacle in the law. It does not follow that, because a mortgage is only security, every security is only a common mortgage."

But, even assuming that this is only a mortgage, there seems to be no reason why full effect should not be given to the covenants for possession in the event of default. In the case just cited (Biggers v. Bird, supra) it is said:

"Even a common mortgage might stipulate for admitting the mortgagee into possession on breach of the conditions. We will observe again that, if the plaintiff is only a mortgagee, he is entitled to the benefit of the covenants for possession; certainly so, after having been received and treated as landlord. It may be unusual for a mortgagee in Georgia to enjoy the possession, but the Code anticipates that it may occur, and takes care to prescribe the time within which the mortgagor may redeem. Section 1964. Doubtless, in redeeming, the debtor would be entitled to proper deductions from the debt on account of the profits of the land realized by the creditor while in possession."

Unquestionably, as between the mortgagor and mortgagee, the mortgagee in possession is entitled to the income and profits of the mortgaged property. This proposition is conceded by counsel for interveners in this case, and could not be denied. They contend, however, that where a court of equity takes possession of the mortgaged property, even at the instance of the mortgagee, it would administer the same for the benefit of all parties in interest, and distribute the proceeds arising from the sale of the property, as well as any income during the receiver's possession, according to legal priority. Then comes their contention that, as the bondholders have no express contract lien on income, and interveners have general judgments prior in date to that of the bondholders for their deficiency, they should have preference over the bondholders as to the income. The supreme court of the United States, in a number of cases, seems to recognize the right of a mortgagee to have income appropriated to the mortgage debt by asking the aid of a court of equity, and the appointment of a

receiver, for that purpose. What is believed to be the correct rule, as laid down by the supreme court, was stated by this court in a recent opinion in the case of Robinson v. Manufacturing Co., 89 Fed. 218, as follows:

"In Kountze v. Hotel Co., 107 U. S. 378, 2 Sup. Ct. 911, it is held that courts of equity always have the power where the debtor is insolvent, and the mortgaged property is an insufficient security for the debt, and there is good cause to believe that it will be wasted or deteriorated in the hands of the mortgagor, as by cutting of timber, suffering dilapidation, etc., to take charge of the property by means of a receiver, and preserve, not only the corpus, but the rents and profits, for the satisfaction of the debt. This doctrine is reiterated in Grant v. Insurance Co., 121 U. S. 105, 7 Sup. Ct. 841, and in Shepherd v. Pepper, 133 U. S. 626, 10 Sup. Ct. 438."

The income of a railroad is, in a sense, the property itself. The mere physical railroad is nothing without the right to its earnings. In this case the bondholders, through their trustee, had the right, upon default in interest, to take possession of the railroad and operate it, or they were authorized to exercise this right by asking for a receiver in a court of equity. This right to possess and operate the railroad was a part of the security given the trustee. When there was default, under the terms of the trust deed, the court took possession of the property at the instance of the trustee, and appointed a receiver, in order to conserve the property in the bondholders' interests, and the officer of the court, while thus acting, made certain profits by operating the property. I do not see how the income thus earned—this increment, which was part of the bondholders' security—can be diverted by the court, and paid to the general judgment creditors, whose liens are inferior to that of the trust deed. The case of United States Trust Co. v. Wabash W. Ry. Co., 150 U. S. 287, 14 Sup. Ct. 86, sustains this view, both by the decision and by the approval in the opinion of former cases decided by the supreme court. While, in a number of cases thus cited, there was a mortgage in express terms upon income, it is clearly determined that it is possession by the mortgagee, or in the mortgagee's instance by the court, through its officer, that gives the right to the income. In the case of Central Trust Co. v. East Tennessee, V. & G. R. Co., on the intervening petition of Miller (30 Fed. 895), in which there was a contest between a general judgment creditor and bondholders, in a decision by Circuit Judge Pardee, in which the judge presiding in this case concurred, it is said:

"General creditors of a railroad corporation, which includes those claiming damages for negligence in operating the railway, have never been held as having any privilege on the income of the property, much less on the corpus of the property; but there are many cases to the effect that no such privilege or equity exists. Davenport v. Railroad Co., 2 Woods, 519, Fed. Cas. No. 3,588; Dexterville Mfg. & Boom Co. v. Case, 4 Fed. 873; Hervey v. Railway Co., 28 Fed. 169; Olyphant v. Steel Co., Id. 729; Central Trust Co. v. Wabash, St. L. & P. Ry. Co., Id. 871."

What the case decided is fairly expressed in different language in the second headnote of the case, as follows:

"A creditor having a judgment for personal injuries against the mortgagor, growing out of torts committed by it before the receivership, is a general creditor, and his judgment is not entitled to priority of satisfaction out of

the earnings of the receivership, and a fortiori not out of the corpus of the estate."

Recent decisions by the supreme court of Georgia are relied upon as establishing a different rule in this state, and one which, it is said, this court should follow. The cases of Green v. Railroad Co., 97 Ga. 15, 24 S. E. 814, Railway Co. v. Barton (decided Aug. 7, 1897) 28 S. E. 842, and Lubroline Oil Co. v. Athens Sav. Bank (decided May 26, 1898) 30 S. E. 409, are the cases cited.    The principal case is Green v. Railroad Co., and the high character of the court, and the eminence as lawyer and judge of the distinguished ex chief justice who wrote the opinion, should give it great weight.    The first headnote states the law, as it was decided in that court, as follows:

"By invoking equitable relief, such as the appointment of a receiver, and the administration of the mortgaged property by equitable means and agencies, mortgagees submit themselves to do equity relatively to any creditor of the mortgagor who may rightly intervene in the foreclosure proceedings in which such relief is sought. Mortgages upon a railway, and the income from the same, the mortgagor being left in possession, are, as to the income, whether produced before or after the appointment of a receiver in foreclosure proceedings, subject to be postponed in equity in favor of a claim for damages resulting from a tort committed by the mortgagor while, and by reason of, operating the railway after the execution of the mortgage. The tort now in question, consisting of negligence in running a train upon the railway, whereby damages accrued, and judgment therefor against the mortgagor having been obtained before the mortgages were foreclosed, or the receiver was appointed, such damages, so reduced to judgments, should be regarded as operating expenses charged by the judgment upon income, as against the mortgages and all their incidents. So long as such a charge is unsatisfied, the mortgages cannot justly and equitably divert income from its payment, and take the benefit of such diversion, whether directly or indirectly."

The learned ex chief justice who wrote the opinion says himself of the decision:

"Every direct authority known to us is against us; nevertheless, we are right, and these authorities are all wrong, as time and judicial study of the subject will manifest."

So that, in view of the fact that all the federal courts, and certainly the court in this circuit, have entertained a different opinion of the law, it could not be expected that the circuit court here would follow these decisions of the supreme court of the state, unless it must do so because it is the construction of a statute.    It is not believed to be this, and, even if it were, the mortgage in this case was made, the bill to foreclose it was filed, and the receiver was in possession, before the decision was rendered.    There had not been, so far as I am aware, any decision to this effect in Georgia prior to 1895.    The supreme court of the state in Vason v. Ball, 56 Ga. 269, had held that as a mortgage in Georgia was only security for debt, and passed no title, the rents and profits of the mortgaged property belonged to the mortgagor until the mortgage was foreclosed and he was sold out.    But this would not apply to a case like this, where there was an express covenant of the right of the mortgagee to take possession in a certain event and to operate the railroad.    While the decisions of the supreme court of the state are strong, persuasive authority, I would not be justified in following them, in view of what I believe to be the set-

tled rule laid down by the federal courts. Certainly, I would not overrule the decision made by the circuit judge and myself in the case of Central Trust Co. v. East Tennessee, V. & G. R. Co., supra, in the absence of controlling authority.

The conclusion, from what has been stated, is that the interveners make no case in their petition which entitled them to priority over the mortgage bondholders, and for that reason the demurrer will be sustained and the petition dismissed.