CENTRAL TRUST CO. OF NEW YORK v. CHATTANOOGA, R. & C. R. CO.
et al.

OWEN et al. v. JONES.

(Circuit Court of Appeals, Fifth Circuit.   May 16, 1899.)

No. 784.

1. RAILROADS—MORTGAGE ON FUTURE-ACQUIRED PROPERTY—GENERAL LAWS.
  There being in force a general law for the incorporation of railroads which authorizes the mortgage of future-acquired property, the fact that the original or amended charter of a railroad company does not authorize a mortgage of after-acquired property will not affect the right to execute

such mortgage, as power in that respect is given under the general law, and the lien of such a mortgage will take precedence of the liens of subsequent judgments on such after-acquired property.

2. SAME—INCOME AFTER DEFAULT IN MORTGAGE—LOCAL LAWS AND DECISIONS.
Neither the local laws of Georgia nor the decisions of the supreme court of that state limit the security of a mortgagee to the corpus, to the exclusion of the income after default.

3. SAME—RENTS AND PROFITS—RECEIVER.
That a mortgage does not expressly include the income on the property mortgaged is not material, as the mortgagee can only be interested in the income on default, on which event, if the maker is insolvent and the security inadequate, he is entitled to the appointment of a receiver to preserve not only the corpus, but the rents and profits, for the satisfaction of the debt.

4. SAME—INSOLVENCY—INADEQUACY OF SECURITY—RECEIVER.
Where a railroad corporation is unable to pay its currently accruing interest, it is actually, as well as technically, insolvent, and its property inadequate security for its mortgage debt, and it may be put in the hands of a receiver.

5. SAME—MORTGAGES—RECEIVERS.
Under a railroad mortgage which expressly authorized a mortgagor to receive the income until default had been made for three months, whereupon the trustee could take possession of the road and operate the property until sale, or apply for a receiver, upon electing to ask for appointment of a receiver the right to the rents and profits inured to the mortgagee, subject to such terms as the court might impose, at the date of entry by the receiver.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

L. A. Dean and C. P. Goree, for appellants.
Alex. C. King, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. The Chattanooga, Rome & Columbus Railroad Company, by a different name, was chartered by an act of the legislature of the state of Georgia approved August 30, 1881. The company was given power to issue bonds in such amount as it desired, and to mortgage all of its railroad, right of way, rolling stock, and franchise for the purpose of securing its bonds. Laws Ga. 1880–81, p. 246, § 13. By an amendment approved December 22, 1886, it was provided that the company should have power and authority to issue income bonds, and to secure the same by a mortgage of its property and franchise, or by pledging the income of its railroad, either or both, as the company should deem proper. Laws 1886, p. 137, § 2. The company was authorized to construct a railroad from Chattanooga, Tenn., to Carrollton, Ga.,—a distance, by the route proposed, of about 140 miles. It began the construction of its road, placed a mortgage on that part of its property lying between Rome and Cedartown to secure an issue of bonds amounting to $150,000, but up to September 1, 1887, had only completed 20 miles of its railroad. On September 1, 1887, it executed the deed of trust foreclosed in this proceeding. This deed conveyed to the trustee all of the railroad constructed and to be constructed extending from Chattanooga, Tenn., to Carrollton, Ga., with all the rights of way,

depot grounds, yards, terminal property and rights, and all such real and personal property as might be germane to and necessary for the construction, operation, and maintenance of its line of railroad, whether then owned and possessed by the mortgagor or thereafter to be acquired,—specifying exhaustively the materials necessary to be used in the construction, maintenance, and operation of the railroad, whether then owned and possessed by the mortgagor or thereafter to be acquired by it; also all the rights, powers, privileges, and franchises of, or belonging to, or thereafter to be acquired by, the mortgagor. This deed of trust was subject to the former mortgage as to so much of the property as that mortgage embraced. It was given to secure an issue of bonds amounting in the aggregate to the sum of $2,240,000. It provided that, in case of default for three months in the payment of any interest coupon when due, the principal of the bond to which the coupon was annexed should immediately become due; and if such default should be made in the payment of interest, and in the payment of principal thereby or otherwise matured, upon the written request of the holder of any bond or coupon the trustee was authorized, empowered, and directed to take and hold possession of the railroad and all its property, rights, etc., and to maintain and operate the same until the day of sale thereafter to be fixed, or, in its discretion, proceed by bill in equity or other appropriate proceeding in any court of competent jurisdiction, whether of the United States or of the state of Georgia, to foreclose the mortgage, and enforce the rights, liens, and securities of the trustee and bondholders thereunder. On September 2, 1887, the defendant railroad company (mortgagor) issued income bonds, and, to secure their payment according to their terms, executed and delivered to the same trustee a mortgage, covering the same property, declared to be subsequent and subordinate in all respects to the mortgage dated September 1, 1887, pledging as security for the payments stipulated to be made by the income bonds and coupons thereto attached the net earnings of the railroad, after providing for the interest on the $2,240,000 of first mortgage prior lien bonds. After the execution and delivery of these mortgages, the mortgagor company sold and conveyed all of its property, including the property covered by the mortgages, to the Savannah & Western Railroad Company, which last-named company came under the control of the Central Railroad & Banking Company of Georgia, all of whose property was placed in the hands of receivers in March, 1892. On September 1, 1892, default was made in the payment of interest on the bonds secured by the mortgage of September 1, 1887, and on March 1, 1893, and on September 1, 1893, default was made in the payment of interest respectively maturing on those dates. On December 15, 1893, the trustee in the deed of trust exhibited its bill, with proper averments, asking for a foreclosure of its lien, a sale of the mortgaged property, and showing that the property was inadequate security for the debt, that the mortgagor and its assigns were insolvent, and praying that, pending foreclosure proceedings, the mortgaged property be taken possession of by a receiver to be appointed by the court, with such powers and authority as may be

requisite to preserve the property until sale thereof, and to secure the earnings for the use of the bondholders. The appellee Eugene E. Jones was thereupon duly appointed receiver by an order passed February 1, 1894. He took possession of all of the railroad property, and operated it pending the progress of the foreclosure suit, under the customary orders in such cases. The decree of foreclosure and sale was passed July 12, 1894. It ascertained the amount due on the bonds at that date. It provided that the funds to be realized from the sale should be appropriated—First, to the payment of costs, including expenses and allowances indicated; second, to the payment of the principal and interest due and unpaid on the bonds secured by the mortgage of September 1, 1887; third, to the payment of the principal of the income bonds secured by the mortgage of date September 2, 1887; and, fourth, should there be any surplus remaining, after making the payments above directed, it was to be paid into the registry of the court to abide such order and decree as the court should make in respect thereto. For reasons which the record does not fully disclose, the sale was not made until some time in the early part of 1897. At the sale a reorganization committee became the purchaser. They complied with the terms of the sale, and the same was confirmed to them by a decree passed June 30, 1897. On September 25, 1897, the interveners filed their petition, showing that they were judgment creditors of the mortgagor company, whose judgments were obtained in the several state courts of Georgia prior to the filing of the bill by the Central Trust Company of New York to foreclose the mortgage. They claimed that, as such judgment creditors, they had a superior lien—First, on the proceeds of the sale of all of the road, except the 20 miles that had been constructed at the date of the mortgage; and, second, on the whole amount of the net earnings in the hands of the receiver acquired by him from his operation of the road pending the foreclosure proceedings. To this petition the receiver (appellee) demurred, on the ground that the lien of the mortgage attached to all of the proceeds of the sale of the railroad property and to the alleged income earned by the receiver, and was superior to the alleged lien of the petitioning creditors' judgments. On September 16, 1898, the circuit court passed its decree, sustaining the demurrer of the receiver, and dismissed the petition of the interveners. 89 Fed. 388. From that decree this appeal was taken.

The errors assigned are: (1) That the circuit court erred in holding that the mortgage is a valid lien upon the property acquired by the railroad company after the execution of the mortgage; (2) in holding that the mortgage creditors are entitled to the income earned by the receiver while operating the railroad; (3) in holding that the judgments are not liens on the after-acquired property and the incomes, superior to the mortgage lien. The appellants contend—First, that the defendant railroad corporation (mortgagor) had no authority, under its original or its amended charter, or the general laws of Georgia, to mortgage on September 1, 1887, any part of its railroad not then constructed, or any part of its equipment or other property which had not theretofore been

acquired and was not then held by it; and, second, that the mortgagor company had no authority, under its charter or under the general laws of Georgia, to mortgage its income.

By the act of the legislature of the state of Georgia approved September 27, 1881, a general law for the incorporation of railroads, it is provided that future-acquired property may be mortgaged by railroad corporations formed under that act. Laws Ga. 1880-81, p. 160, § 9. The supreme court of Georgia, by a decision rendered on August 20, 1894, held:

"(1) There being in force a general law for the incorporation of railroad companies, if the subsequent special charters of the two railroad companies involved in this litigation were unconstitutional, and therefore wholly void, each of said companies was, nevertheless, a corporation de facto, and, as such, could acquire and own property, and would be bound to its creditors by all acts which would have bound it had it been duly incorporated under the general law. Bonds issued by it, and deeds or mortgages made to secure the same, are enforceable to the same extent as they would be if no special charter had been granted, and the company had been organized as a corporation in the method prescribed by the general law, and such bonds, deeds, and mortgages had been thereafter executed; and any person making claim upon the assets of one of these corporations de facto, whether as its own creditor directly, or as a creditor of such creditor or of a stockholder, sustains the same relation to it in respect to such claim as would be sustained under like circumstances were it a corporation de jure. (2) A corporation created under the general law of this state for incorporating railroad companies can bind by mortgage or trust deed, executed to secure bonds issued by it to provide funds for constructing its railroad, future-acquired property, as well as property owned by it at the time of the execution of the instrument. This being so, a corporation de facto can do the like." Georgia S. & F. R. Co. v. Mercantile Trust & Deposit Co., 94 Ga. 306, 21 S. E. 701.

In the opinion in the case just cited we find this language:

"If we have succeeded in showing that these railroad companies, supposing their special charters to be void, are de facto corporations, because of the existence of the general law, it would seem that they might make any contracts authorized by that law, and become bound by such contracts to those with whom the same were made. As a practical proposition, it is well known that most, if not all, of the railroads of any length in the United States which have been built for years past have been constructed by issuing in advance bonds upon their entire lines, including the unbuilt portions, as well as those already constructed, with mortgages to secure the bonds covering the whole. If a de facto railroad company is a corporation for any purpose at all, it ought, on general principles, to have the power to mortgage 'future-acquired property'; and this seems to be the doctrine very generally recognized by the courts."

On the authority of this decision of the supreme court of Georgia, the circuit court rightly held that the appellants' first contention is not well taken.

The appellants' second contention is that the deed of trust foreclosed in these proceedings does not purport, in express terms, to cover the income of the railroad property, and that, if it did, the mortgagor company had no authority to mortgage its income. It is earnestly insisted that the questions submitted by this contention depend upon the local law as declared by the statutes of Georgia and by the decisions of the supreme court of that state. We have examined with some care all the provisions of the statute law which seem to us to bear either directly or remotely upon these questions, and, in connection therewith, the decisions of

the supreme court of Georgia to which we have been referred. We have considered with especial care and with deep interest the decision in Green v. Railroad Co., 24 S. E. 814, and the later decision in Railway Co. v. Barton, 28 S. E. 842. The authority of the decision first just above cited is stated thus by the court:

"By invoking equitable relief, such as the appointment of a receiver and the administration of the mortgaged property by equitable means and agencies, mortgagees submit themselves to do equity relatively to any creditor of the mortgagor who may rightly intervene in the foreclosure proceedings in which such relief is sought. Mortgages upon a railway, and the income from the same, the mortgagor being left in possession, are, as to the income, whether produced before or after the appointment of a receiver in foreclosure proceedings, subject to be postponed in equity in favor of a claim for damages resulting from a tort committed by the mortgagor while and by reason of operating the railway after the execution of the mortgage. The tort now in question consisting of negligence in running a train upon the railway, whereby damages accrued, and judgment therefor against the mortgagor having been obtained before the mortgages were foreclosed or the receiver was appointed, such damages, so reduced to judgment, should be regarded as operating expenses charged by the judgment upon income as against the mortgages and all their incidents. So long as such a charge is unsatisfied, the mortgagees cannot justly and equitably divert income from its payment, and take the benefit of such diversion, whether directly or indirectly."

This decision evidently does not purport to rest upon local law. It extends a little further than had hitherto been done the class of preferential claims which have been fully recognized generally by the courts since the decision in Fosdick v. Schall, 99 U. S. 235. There was manifested in the circuit courts of the United States a disposition to extend the doctrine of Fosdick v. Schall to a degree that has challenged the attention of the supreme court, and moved it to check this tendency, as appears from its utterances in Kneeland v. Loan Co., 10 Sup. Ct. 950, and subsequent cases. The fact that so many railroad corporations have issued bonds and mortgaged their property in advance of the construction of their railroads, and the acquisition of the property mortgaged, greatly beyond its market value at forced sale, had inclined courts of equity to treat the holders of railroad bonds, or the trustees in the mortgages, as the owners of the roads, rather than simply as lienholders, and to charge them as such owners, after default, with the unpaid expenses of operating the property. It has become the settled practice, where mortgagees invoke equitable relief and seek the appointment of a receiver and the administration of the mortgaged property by equitable means and agencies, to require them to permit payment of that large class of claims generally referred to as "preferential claims." The considerations which inspired the glowing argument of the distinguished jurist who wrote the opinion in the case of Green v. Railroad Co., supra, have touched the consciences of other chancellors. No exactly definite limits can be traced to include the class of claims which have generally been heretofore allowed as preferential. The warnings of the supreme court indicate that the bounds have been extended as far as sound judicial discretion can go, and that, if further relief is needed, it can be granted only by the legislature. The decisions of the supreme

court of Georgia on which the appellants chiefly rely have been rendered since the execution of the mortgage here involved, and since the default, which by the terms of the mortgage terminated the right of the mortgagor to receive the income, and since the appointment of the receiver, who took possession of the property at the prayer of the mortgagee, to secure the earnings of the railroad to the use of the bondholders. We do not see in these decisions anything to control or qualify the settled doctrine that has obtained in the courts of the United States in such foreclosure proceedings as these. The appellants appear to regard as of the first importance the distinction between mortgages which, in express terms and with full warrant, are made to include the income of the property, and those which for want of power in the mortgagor, or a failure to exercise the power, do not expressly embrace the income. As far as we have been able to discover, such a distinction cannot rest on any provisions of the statute law of Georgia that are peculiar to that state, either in the lan guage of those provisions or in the construction that has been placed on the language by its supreme court. The Civil Code of Georgia (section 2723) declares, "A mortgage in this state is only security for a debt, and passes no title." That rule is not peculiar to Georgia. It was the rule in equity from the beginning. In this country that rule is accepted by the courts of law. In some states, as in Georgia, it is expressed in a statutory provision; but, wherever thus found, it is only declaratory of the law already established by the dealings of the people and the decisions of the courts. This rule being established, it would seem to be immate rial whether or not the income is expressly named as included in the mortgage. When the mortgage does expressly include the income, the mortgagee can only claim his debt, principal and in terest; and, while these are paid as they mature, he can have no cause of action on his mortgage for possession, or for account of rents and profits, or for any other account. He receives what is due him as it matures, and the mortgagor, or his assigns in pos session, receive, and have a right to receive, the rents and profits. If default is made in the payment of interest, or of principal that has matured, the mortgagee has his right to foreclose according to the terms of the mortgage. If the corpus of the mortgaged property is ample security for the whole mortgage debt, the mortgagee has no need, even after default, to look to the income, or to an account of rents and profits, so long as the corpus is adequate security. When the mortgaged property is not of value sufficient to secure the payment of the mortgage debt, or when its sufficiency becomes substantially doubtful, and the mortgagor is insolvent, accruing interest matured and unpaid, like accruing taxes due and unpaid, takes the character of waste as clearly and distinctively as deteriorations by the cutting of timber, suffering dilapidation, etc.,—the leading illustrations from the earliest time in the adjudged cases and with text writers. In such cases courts of equity always have the power to take charge of the property by means of a receiver, and to preserve not only the corpus, but the

rents and profits for the satisfaction of the debt. Kountze v. Hotel Co., 107 U. S. 378, 2 Sup. Ct. 911; Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420.

The bill in this case shows that the mortgagor company and its assigns are insolvent, are unable to pay their debts and liabilities in full, and that the value of the property covered by the mortgage of September 1, 1887, is less in amount than the amount of the bonds issued under that mortgage, and is inadequate security for their payment. The result of the sale shows that after nearly three years' delay (during which the property was improved) the court, through its commissioner, succeeded in obtaining a bid for the mortgaged property as an entirety to an amount equal to not more than one-fifth of the mortgage debt at the date of the sale. It is true that such sales are not a reasonable test of the actual value of such property. It is, however, equally true that the conditions which generally affect such property have been found to render it not practicable to make a sale thereof in any other manner to any greater or to an equal advantage to all parties concerned therein. The practical result from these prevalent conditions is that, when a railroad corporation is unable to pay its currently accruing interest, it is actually, as well as technically, insolvent, and its property inadequate security for its mortgage debt. The larger part of the value of the property is dependent upon its continued operation as a public carrier. Its successful operation and ability to earn income are in most cases largely dependent on the railroad's connections, and its friendly relations with other carriers, and on the good will it has secured. And while the appointment of a receiver is not a matter of strict right, and such applications always call for the exercise of judicial discretion, these imminent conditions bearing upon such property, after default by the mortgagor in the payment of interest on the mortgage debt, give to an application for the appointment of a receiver great force, and the practice to grant the prayer therefor in such cases has become settled. We think it is quite equally well settled that the receiver takes and operates the property, subject to the preferential claims as stated in Fosdick v. Schall, and to liens prior in point of time to the date of the mortgage, for the benefit of the mortgagees, according to their priority. His possession is "that of the court, whose officer he is, and adds nothing to the previously existing title of the mortgagees. He holds, pending the litigation, for the benefit of whomsoever in the end it shall be found to concern, and in the meantime the court proceeds to determine the rights of the parties upon the same principles it would if no change of possession had taken place." This is precisely what the circuit court did in this case. It has determined that the judgments, being junior to the mortgage in the date of their rendition, if entitled to a lien at all on the corpus of the mortgaged property, such lien is not superior to that of the mortgage. And the mortgage by its terms having limited the right of the mortgagor to remain in possession and receive rents and profits, and authorized the entry of the trustee either without or by

the aid of a court of equity, the right to operate the road and receive its rents and profits, subject to such terms as the court of equity might impose, inured to the mortgagees at the date of the entry by the receiver.

We have seen that the mortgage does expressly provide that the mortgagor should receive the income until default had been made for three months in the payment of interest on the bonds, and that thereupon the trustee had the right to take possession and operate the mortgaged property until the sale to be thereafter fixed, or, at its discretion, to apply to a court of equity, as it elected to do, for the appointment of a receiver to take charge of the property, and operate the same until a sale should be made. We have seen, further, that in the issuance of its income bonds, and the mortgage given to secure the same, it provided that payment thereon should be made out of the net income of the road, after the interest on the bonds issued under the prior mortgage was duly paid. It seems clear to us that the circuit court did not err in holding that the lien of the mortgage was superior to the lien of the judgments, both as to the proceeds of the corpus of the property and as to the net income from the operation thereof while it was in the hands of the receiver. The decree of the circuit court is therefore affirmed.