# GRANT *v.* PHŒNIX LIFE INSURANCE COMPANY.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued March 24, 25, 1887. — Decided April 4, 1887.

A *cestui qui trust* under twenty-six trust deeds of land, executed to five dif-
ferent sets of trustees, to secure the payment of money, filed a bill in
equity in the Supreme Court of the District of Columbia, to procure a
sale of the land. Some of the deeds covered only a part of the land.
One of them covered the whole. All of the trustees were made defend-
ants, and the bill was taken *pro confesso* as to all of them. As to the
trustees in twenty-two of the deeds, the bill alleged that they had de-
clined to execute the trusts. The holders of judgments and mechanics'
liens and purchasers of some of the land were made defendants. Some
of the trust deeds did not specify any length of notice of the time and
place of sale by advertisement. The bill alleged the insolvency of the
grantor and the inadequate value of the land to pay the liens. On an
objection by the grantor that the *cestui que trust* could not maintain the
bill: *Held*, that the objection could not be sustained.
The bill was not multifarious.
The Special Term made a decree for the sale of the land, without hearing
evidence on issues raised by the pleadings. On appeal, the General
Term reversed the decree, and remanded the cause to the Special Term
for further proceedings, with permission to the parties to apply to the
Special Term for leave to amend their pleadings; *Held*, that this was a
proper order under § 772 of the Revised Statutes of the District of
Columbia.
A decree in a prior suit held not to be pleadable as *res adjudicata*, in view of
the proceedings in that suit.

Pleas filed with an answer, where the answer extends to the whole matter covered by the pleas, held to have been properly overruled.

The appointment of a receiver twenty days after the filing of the bill, to collect rents and to lease unrented property, upheld, as within the rule laid down in *Kountze* v. *Omaha Hotel Co.*, 107 U. S. 378, 395.

The appointment of a receiver by an interlocutory decree held not to have been superseded, because it was not expressly continued by the final decree.

Commissions on loans, not paid by the borrower to the lender, held not to constitute usury.

BILL in equity. Decree for complainant. Respondent appealed. The case is stated in the opinion of the court.

*Mr. Joseph E. McDonald* and *Mr. H. W. Blair* for appellant.

*Mr. William F. Mattingly* and *Mr. M. F. Morris* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Supreme Court of the District of Columbia, on the 17th of April, 1875, by the Phœnix Mutual Life Insurance Company, a Connecticut corporation, against Albert Grant and others, to enforce certain deeds of trust, 26 in number, executed by Grant and his wife to secure sundry sums of money, the plaintiff claiming to be the owner of all the debts secured by the deeds of trust, which cover various lots in square 760, in the city of Washington. The suit applies to lots 1, 3, 4, 5, 6, 8, 9, 10, 11, 12, 14, 16, 17 and 18, all of which but lots 16, 17 and 18 had buildings on them when the suit was brought. The total amount of principal moneys alleged in the bill to be due on the debts secured by the deeds of trust is $312,658.14. The trustees in the several deeds of trust, being five different sets of trustees, two in each set, are made parties defendant, as are certain judgment and mechanics' lien creditors of Grant, and purchasers from him. The bill alleges that Grant is insolvent; that the property is very much deteriorating for the want of necessary repairs to the buildings upon it, which Grant is

unable or unwilling to make; and that 10 of the buildings are unoccupied. The bill prays for the appointment of a receiver to rent and properly care for 12 of the lots; that the net amounts collected by the receiver be paid over to the plaintiff on account of the indebtedness; that the 14 lots covered by the trust deeds may be sold to pay the indebtedness due to the plaintiff; and that the proceeds of the sale be paid to the parties lawfully entitled thereto.

On the 7th of May, 1875, after a hearing, the court made an order appointing a receiver of 10 of the lots, to collect the rents of rented property, and to lease such as was unrented.

On the 6th of July, 1875, Grant demurred generally to the bill. This demurrer was overruled on the 8th of November, 1875, with leave to answer.

On the 27th of November, 1875, Grant filed an answer denying his indebtedness as to a large part of the amount claimed by the plaintiff, and denying generally the equities of the bill; and with the answer filed four pleas, setting up (1) a want of jurisdiction in the Court to decree a sale, on the ground that the only lawful authority to make the sale without the consent of Grant was vested in the several trustees; (2) the non-joinder of numerous parties named in the plea; (3) the illegality of the indebtedness claimed, because $9000 of illegal and usurious interest was charged by the plaintiff and paid by Grant on such indebtedness; (4) that all the indebtedness was paid and satisfied before the bringing of the suit.

On the same day, Grant filed a cross-bill, making as defendants the parties to the original bill and those named in the second plea, in which he set up that a contract had been made between him and the plaintiff, on the 1st of March, 1873, by the terms of which, among other things, all of his obligations to the plaintiff were to be surrendered to him in consideration of a deed in fee to be made by him to the plaintiff of 11 of the lots. The cross-bill prayed for a specific performance of such contract by the plaintiff.

On the 23d of December, 1875, the plaintiff moved to strike out the pleas, and also demurred to the cross-bill. On the 15th of March, 1876, the demurrer to the cross-bill was sustained,

with leave to amend. On the 20th of March, 1876, the plaintiff filed a general replication, joining issue with Grant. On the 6th of May, 1876, the Court in special term made an order referring the cause to the auditor of the Court to state the account between the plaintiff and Grant, the amount due under the several deeds of trust, the amounts due to the judgment and mechanics' lien creditors referred to in the bill, whether the same are liens upon any of the real estate, the relative priorities of the claims of such creditors and the plaintiff, and the value of the real estate. From this order Grant appealed to the General Term. On the hearing before the auditor he refused to receive evidence on the part of Grant in support of any of the defences raised by his answer.

On the 19th of June, 1876, the auditor filed his report, in which he reported upon the several matters referred to him, and found the amount due on the several deeds of trust on the real estate the sale of which the bill prayed for, to be $425,848.83, including interest, and stated the value of the fourteen lots and of the buildings upon them to be $200,425. Grant filed exceptions to this report, and on the 11th of December, 1876, the court made a decree overruling the exceptions and confirming the report. The decree directed that the fourteen lots be sold by trustees named in the decree, un less Grant should, by a day specified, pay into court for the plaintiff the sum of $407,117.58. In case of a sale, the proceeds were to be brought into court to abide further order. Grant appealed to the General Term from this decree.

On the 28th of March, 1877, a decree was made by the General Term, reversing the decree of the Special Term of December 11, 1876, setting aside the order of reference to the auditor and the proceedings thereunder, and remanding the cause to the Special Term for further proceedings, to commence with the cause as it stood after the filing of the replication and when application for the reference to the auditor was made, with leave to Grant to move to amend his cross-bill and to the plaintiff to apply for such order as it might be advised in regard to its replication. The decision of the General Term, reported in 3 MacArthur, 42, considers the objection

raised to the jurisdiction of the court to decree a sale, on the ground that by the trust deeds the sales were to be made by the trustees, and overrules it. It says: "The present case contains many particular features which seem to render the jurisdiction of the court absolutely indispensable in order that a fair sale should be made, and bidders should know beforehand that they could get a valid title under a decree in which the rights of every person having a claim upon the property had been ascertained and settled. From the face of the bill it appears that the property in question has been subdivided into numerous lots. Some of the deeds of trust are liens upon all the lots; others upon some of them only. Payments have been made on account of some of the claims, and none upon others. The aggregate liens exceed the value of the property, and the owner is apparently insolvent. Purchasers from Grant subsequent to the liens are parties to the bill, and in justice to them the securities should be marshalled. The parties in interest are numerous, and the complication of rights is so great that nothing can settle them except a decree in equity." It goes on to hold that the order of reference to the auditor was erroneous in the then condition of the cause, and that the issues raised by Grant ought to have been first tried in the usual way.

On the 21st of May, 1877, by leave of the court in Special Term, Grant filed amendments to his cross-bill. On the 23d of July, 1877, the plaintiff by an order of the Special Term, withdrew its replication filed March 20, 1876, and filed a general replication to the answer of Grant, and set down for argument the pleas filed with Grant's answer. On the 11th of September, 1877, Grant filed a supplemental answer, setting up as a bar to the suit a decree made by the Supreme Court of the District of Columbia, in equity, in a suit wherein Aaron Carter, Jr., and others were plaintiffs, and Grant and the Phœnix Mutual Life Insurance Company and others were defendants; and the company filed an answer to the amended cross-bill of Grant.

On the 12th of February, 1878, the court in General Term, on an application made by Grant at the Special Term and

which it ordered to be heard in the first instance by the General Term, made an order vacating the receivership and directing the receiver to deliver to Grant possession of ten of the lots, and to pay into the registry of the court all moneys in his hands derived from rents and profits.

On the 4th of March, 1878, the court in Special Term made an order overruling all of the pleas filed by Grant. Grant appealed to the General Term from so much of this order as overruled the 2d, 3d and 4th pleas.

On the 2d of July, 1879, the General Term affirmed the order of the Special Term overruling the 2d, 3d and 4th pleas, and remanded the cause to the Special Term for further proceedings. On the 22d of November, 1879, the plaintiff filed a replication joining issue with Grant on his supplemental answer to the bill.

Thereafter, testimony was taken by both parties on the issues raised. Testimony was taken at Hartford, Connecticut, on the part of the plaintiff, by commission. Grant moved to suppress certain depositions taken under that commission. The motion was granted as to three depositions and overruled as to the others. Complaint is made by Grant that upon the motion to suppress he was not permitted to read certain affidavits, and that he was denied leave to cross-examine orally certain witnesses at Hartford, and that he was denied an extension of time in which to take testimony in rebuttal of evidence taken on the part of the plaintiff at Hartford.

On the 9th of February, 1881, the Court in Special Term made an order referring the cause to the Court in General Term for hearing in the first instance.

On the 2d of March, 1882, the cause having been heard by the General Term on the pleadings and proofs, a decree was made by it declaring that Grant is not entitled to any relief under his cross-bill; that the plaintiff is the holder and owner of the several obligations of Grant secured by the deeds of trust of the real estate the sale of which the bill prays for; that Grant has made default in the payment of his said obligations, on which he is indebted to the plaintiff in large sums of money; that the taxes on the real estate are in arrear for

more than $20,000; that the indebtedness of Grant to the plaintiff largely exceeds the value of the real estate; that the plaintiff has no personal security for its debt; and referring the cause to the auditor of the court to state the account between the plaintiff and Grant, the amount due under the deeds of trust, the amounts due to judgment and mechanics' lien creditors, whether the same are liens upon any of the real estate, the relative priorities of the claims of those creditors and the plaintiff, the value of the real estate, the amount of taxes in arrear, and the particulars of any sales for taxes. The decree also appoints a receiver in the cause, to take possession of 12 of the lots and lease them, and enjoins Grant from interfering with the receiver in his possession and control of the property.

The reference was had before the auditor, and on the 1st of May, 1882, he filed his report, finding that there was due on that date from Grant to the plaintiff on the indebtedness secured by the trust deeds $285,202.09 of principal, and $225,-117.98 of interest, making a total of $510,320.07. The report also showed that the amount of taxes and interest thereon, in arrear, upon the real estate, was $48,755.05, and that the value of the 14 lots and the improvements upon them was $137,000. On the 5th of March, 1883, Grant filed exceptions to the auditor's report. The case was brought to a further hearing in the General Term, on its interlocutory decree of March 2, 1882, and on the report of the auditor, and on the exceptions of Grant thereto, and on the 16th of June, 1883, it made a final decree overruling the exceptions, confirming the report, and dismissing the cross-bill of Grant, and decreeing that unless Grant should, by a day specified, pay to the complainant the sum of $510,320.07, with interest on $285,202.09 from May 1, 1882, and the costs of the suit, the 14 lots should be sold by a trustee appointed by the decree, and the proceeds of the sale should be brought into court to abide further order. From that decree Grant has appealed to this court.

The first assignment of error is that the court erred in overruling the demurrer of Grant. The bill seeks to foreclose the equity of redemption of Grant in the property covered by

26 trust deeds executed to 5 different sets of trustees, the plaintiff being the *cestui que trust* in all of them, either originally or by purchase. Some of these deeds cover only one lot, others embrace two or more lots; and there is but one of them which embraces all of the property. All of the trustees are made defendants, and the bill has been duly taken *pro confesso* as to all of them. As to Gallaudet and Paine, trustees in 22 of the 26 deeds, the bill alleges that they have declined to execute their trusts. The bill also sets forth a number of judgments and mechanics' liens held by parties who are made defendants, none of the mechanics' liens covering the whole property, and a number of purchases of lots from Grant. The objection made is that the bill does not show a right in the plaintiff to maintain the suit; that each trust deed vests in its trustees a legal title to the property covered by it, with power to sell; that the interest of the *cestui que trust* is represented by the trustees, who must enforce the trust; and that unless the bill shows a failure on their part to do so, through incapacity or otherwise, the *cestui que trust* has no standing in court in its own right. The bill alleges that, in 12 of the deeds of trust executed January 1, 1872, to Gallaudet and Paine as trustees, the length of notice of the time and place of sale by advertisement is left blank; that this would prevent the trustees from executing such power of sale; but that in a court of equity the deeds would be considered as mortgages. It is urged on the part of Grant that this defective power of sale renders it the more necessary that the trustees, rather than the *cestui que trust*, should act in either seeking a correction of the defect or in enforcing the trust. But we think there is nothing in the objection thus raised. The case is one clearly of equity cognizance, for the reasons above set forth and those contained in the opinion of the General Term above quoted. No objection is made on the part of any of the trustees to the maintenance of the suit. The bill is taken as confessed as to all of them, and there is no possible prejudice to the defendant Grant, in the bringing of the bill in its actual shape by the *cestui que trust*.

Nor is the bill open to the objection that it is multifarious.

The fact that one of the deeds of trust covers the entire property, and that some of the creditors of Grant who were made defendants have liens upon various portions of that property, makes it eminently proper, and indeed indispensable, if a clear title is to be given by a sale, to adjudicate all the claims in one suit.

The second assignment of error is that the General Term erred in its decree of March 28, 1877, in remanding the cause to the Special Term for further proceedings, after it had reversed the decree of the Special Term of December 11, 1876, and especially in then authorizing the plaintiff to apply to the Special Term for such order as it might be advised in regard to its replication. The ground taken is, that as, at the time of the hearing which resulted in the decree of the Special Term of December 11, 1876, no testimony had been taken upon any of the issues raised by the pleadings, and as the plaintiff had gone to hearing in that state of the case, and had obtained a decree of sale in the Special Term, that decree was a final decree in its favor on the merits; and that, on the hearing in the General Term, on the appeal of Grant, upon the same record, the General Term, finding the decree of the Special Term to have been erroneous, was bound to enter a decree on the merits in favor of Grant, reversing the decree of the Special Term and dismissing the bill. But we are of opinion that the General Term had power to make its decree of the 28th of March, 1877. The error of the Special Term was in making a decree of sale on the report of the auditor, without a trial of the issues raised by the pleadings. For that error its decree was reversed, and it was proper for the General Term to remand the cause to the Special Term for further proceedings in the taking of testimony on the issues, and with permission to the parties to apply in the Special Term for leave to amend their pleadings. This was, within § 772 of the Revised Statutes of the District of Columbia, a modification of the decree of the Special Term, on an appeal involving the merits of the action. The decree of the General Term reversed that of the Special Term and vacated the order of reference to the auditor, and all proceedings thereunder, and the further

directions in the decree of the General Term were but modifications of the decree of the Special Term.

The third assignment of error is, that the court erred in not sustaining Grant's defence of *res adjudicata*, as set up in his supplemental answer of September 11, 1877. There is attached to that answer a transcript of the record in the suit of Carter and others against Grant and others. The bill in that case was filed on the 30th of October, 1872, and was brought by three judgment creditors of Grant, on their own behalf and that of all others similarly situated, who should become parties. The defendants in it were Grant and his wife, the Phœnix Mutual Life Insurance Company, the trustees in the various trust deeds sought to be enforced by that company, and various creditors of Grant. It set forth the existence of the various deeds of trust mentioned in the bill in this suit, and prayed for the sale of 12 of the lots covered by those deeds. of trust, and that the proceeds of the sale, after satisfying all valid prior liens upon the lots, be applied to the payment of the complainants' judgments. An amended and supplemental bill having been filed in the Carter suit, the Phœnix Mutual Life Insurance Company filed an answer, on the 12th of June, 1874, setting up that Grant is indebted to it in the full amount called for by the several deeds of trust held by it; that the amount of said indebtedness is equal to the value of the property; and that it is willing that the property should be sold under the decree of the court and all equities adjusted on the distribution of the fund, claiming, at the same time, that the judgment creditors have no standing in court without having first offered to redeem the incumbrances on the property which are prior in date to the judgments. After a decree by the Special Term in favor of the plaintiffs in the Carter suit, directing a sale of 12 of the lots free from all liens, and that the proceeds be brought into court, and that all equities between the parties to the cause be reserved for consideration on the distribution of the fund, the General Term, on an appeal to it by Grant from the decree, reversed it on the 6th of March, 1875, and dismissed the bill.

We are of opinion that there is nothing in the record of the

Carter suit, or in the above-recited proceedings therein, or in any other proceedings therein, which operates to sustain the defence of *res adjudicata.* The Phœnix Company was a defendant, and merely a defendant, in the Carter suit, subject to the decree which might be made therein, setting up and maintaining its claims, and expressing its willingness that the property in question should be sold and the equities adjusted on the distribution of the proceeds of sale. The plaintiffs' bill being dismissed out of court, there is nothing which can operate as a bar to the bill in the present suit.

The fourth assignment of error is, that the court erred in overruling the 2d, 3d and 4th pleas to the bill. The ground on which the General Term affirmed the order of the Special Term overruling the pleas is stated in the opinion of the General Term, delivered by Mr. Justice Cox, MacArthur & Mackey, 117, to have been, that the 2d, 3d and 4th pleas, to which alone the appeal related, raised defences that were covered by the answer of Grant. That answer distinctly sets up the defence of usury, covered by the 3d plea, and the defence of payment, covered by the 4th plea. The 2d plea, relating to the want of proper parties, was overruled on the ground that the necessity of making the omitted persons parties was not apparent. We concur in the disposition made, for the reasons thus stated, of these pleas. The defendant has had, under his answer, the benefit of the defences of usury and payment set up in the 3d and 4th pleas; and the rule that no plea is to be held bad only because the answer may extend to some part of the same matter as may be covered by the plea, is not applicable where the answer extends to the whole of the matter covered by the plea.

The fifth assignment of error complains that the court overruled the motion of Grant to suppress certain depositions taken by the plaintiff at Hartford, when these depositions had been taken after the time limited for the taking of depositions by the plaintiff, and the witnesses had refused to answer certain cross-interrogatories propounded by Grant, and for other irregularities appearing on the motion to suppress the depositions; and the sixth assignment of error complains that the court

erred in refusing to allow Grant further time to take depositions in rebuttal of the depositions on the part of the plaintiff. We are unable to see that the court did not exercise a proper discretion in its action in the matters thus complained of.

The seventh assignment of error is, that the court took the property in controversy out of the possession of Grant by the appointment of a receiver before a sale, and thus deprived him of the use of the property and of its rents and profits; and that it erred in the final decree, in finding the equities of the case in favor of the plaintiff and against Grant, and in dismissing the cross-bill of Grant and ordering a sale of the property.

The original order for the appointment of a receiver was made on the 7th of May, 1875. It put into the possession of the receiver ten of the lots, with power to collect the rents of such of them as had been rented and to lease the others. After a lapse of thirty-three months, and on the 12th of February, 1878, the General Term, in which a motion to discharge the receiver was heard in the first instance by order of the Special Term, made an order vacating the receivership. The opinion of the General Term in this matter, reported in 3 MacArthur, 220, shows that the ground taken by the majority of the five judges, (two of them dissenting from the decision,) in discharging the receivership, was, that it had failed to accomplish its purpose, and that the property was going to destruction without yielding a revenue sufficient to pay the ordinary taxes. The receivership was renewed by the decree of the General Term of March 2, 1882, establishing the rights of the plaintiff and ordering a sale of the twelve lots. The defendant contends that the court had no power, before a sale to appoint a receiver of the property involved in the litigation, and thus deprive him of its use and of its rents and profits, on the ground that the trust deeds do not embrace the rents and profits of the property. But we are of opinion that the original appointment of a receiver, and the appointment of one made by the decree of the General Term, of March 2, 1882, were proper, and were a reasonable exercise of the discretion of the court, within the principle stated by this court, speak-

ing by Mr. Justice Bradley, in *Kountze* v. *Omaha Hotel Co.*, 107 U. S. 378, 395, in these words: "Courts of equity always have the power, where the debtor is insolvent, and the mortgaged property is an insufficient security for the debt, and there is good cause to believe that it will be wasted or deteriorated in the hands of the mortgagor, as by cutting of timber, suffering dilapidation, &c., to take charge of the property by means of a receiver, and preserve not only the *corpus*, but the rents and profits, for the satisfaction of the debt." The circumstances which, within this rule, justified the exercise of the discretion of the court in appointing a receiver originally, existed in greater force when the receiver was appointed by the decree of March 2, 1882. A point is made, that, as the appointment of the receiver made by the interlocutory decree of March 2, 1882, was not expressly continued by the final decree of June 16, 1883, it was superseded; but there is no force in this suggestion.

In the final decree, the Court found to be due the whole debt shown on the face of the trust deed of August 26, 1871, to Davis and Downman, trustees, covering 14 lots, to secure $40,000 due to one Fletcher, and also the whole debt shown on the face of the 12 trust deeds of January 1, 1882, to Gallaudet and Paine, to secure in the aggregate to the plaintiff $81,000. It is claimed by Grant that the trust deed to Davis and Downman, and the several trust deeds to Gallaudet and Paine, were executed to secure loans from the plaintiff; that Fletcher was the agent of the plaintiff in the Davis and Downman trust deed; and that the trust deeds of January 1, 1872, to Gallaudet and Paine, for $81,000, provided for and in effect paid the $40,000 Fletcher indebtedness secured by the Davis and Downman trust deed. We have examined the evidence on this point, and are of opinion that the contention of Grant is not sustained by it. It is not profitable to discuss it.

It is also contended by Grant, that the loans received by him from the plaintiff were upon usurious interest to the amount of $9000, and that thereby the entire interest decreed was forfeited. But we are of opinion that the evidence shows that the commissions paid by Grant upon the loans, (in

which the usury is alleged to have consisted,) were not paid to the plaintiff. The plaintiff made no contract for usurious interest nor did it take any. *Call* v. *Palmer*, 116 U. S. 98.

The gravamen of the cross-bill of Grant is, that his debt to the plaintiff was extinguished by reason of a contract of sale entered into by him with it, by which, in consideration of the advances it had made to him, and of the amount due from him to it on the several trust deeds, and certain other considerations, he agreed to convey to it 11 of the lots involved in this litigation. It is sufficient to say, that the proofs do not sustain the existence of any such contract. No such contract was ever executed in writing, none was even in part performed by either of the parties, and letters which passed between them subsequently to March 1, 1873, (the alleged date of the contract,) show that no such contract was understood by them to exist.

Other minor considerations are urged in the briefs of the appellant, which we have considered, but which it is not deemed important to discuss at length. We see no error in the final decree of the court below, and it is

*Affirmed.*