**TOTTEN et al. v. HARLOWE et al.**

**No. 6782.**

United States Court of Appeals for the District of Columbia.

Argued Feb. 11, 1937.

Decided March 29, 1937.

Rehearing Denied April 19, 1937.

See, also, 66 App.D.C. 373, 88 F.(2d) 755.

Jacob N. Halper and Daniel Partridge III, both of Washington, D. C., for appellants.

Paul E. Lesh and B. Woodruff Weaver, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

Oaklawn Terrace is an apartment building in Washington City. In 1929 the owner, David L. Stern, and his wife mortgaged the property for $385,000. The debt was payable in three years, and the deed of trust contained the usual provisions for sale in the event of default in principal, interest, or taxes. In 1930 Howe Totten, one of appellants, purchased the property subject to the deed of trust, and executed a second trust to secure $30,000. In October, 1932, the principal debt under the first deed of trust fell due and in November following appellees John C. Harlowe and Elva D. Harlowe filed a bill in equity alleging only default in the payments of taxes, and asking for the appointment of a receiver to operate the property and collect the rents. Jerome F. Barnard was appointed receiver and continued in possession for three years. Out of the earnings he paid the installments of interest due on the trust indebtedness to October 30, 1935, and taxes to the end of 1935. During the pendency of the suit and in 1934 the Harlowes asked leave of court to amend the bill for the purpose of having the court substitute new trustees in place of trustees substituted by an order of court in a previous suit. The object was to correct what was thought to be an error in the former appointment. Subsequently and in 1935 the Harlowes made an additional motion for leave to amend, alleging default in the principal of the debt. The court allowed the amendment with relation to the appointment of new trustees and entered an order accordingly, but refused to allow an amendment to show also default in the principal debt. The default in taxes having been terminated by payment, the court dismissed the bill, discharged the receiver, and restored Totten to possession of the property. This occurred November 27, 1935. If the litigation between the parties had terminated at this time, it is obvious that the Harlowes would have been in position immediately to demand sale of the property through the trustees, but what actually occurred was that Totten appealed from that part of the order of November 27th substituting trustees, and the effect of this was for all practical purposes to supersede the order until the appeal was disposed of—for obviously the property could not be sold by trustees whose title was challenged, and it was apparent that approximately a year must pass before the appeal could be disposed of and equally apparent that at least for that period Totten would collect the rents and appropriate them to his own use without accountability. In these circumstances, the Harlowes filed their bill in the lower court January 10, 1936, alleg-

ing that the whole debt had become due and payable; had not been paid; that the security was not sufficient to pay the debt; that the original maker of the notes was insolvent and unable to pay any deficiency resulting from the sale; and that the present owner, Totten, was not liable on the notes but, together with his son, was collecting the rents; and that his son, Enoch Totten, the other appellant, was the holder of an unrecorded deed of conveyance of the property—and praying the aid of the court for the foreclosure of the trust and for the appointment of a receiver to collect the rents pendente lite.

There was a rule to show cause, a motion by the Tottens to dismiss, and a hearing on the merits by the court below. In February, 1936, the trial judge found that it was almost certain the property would not sell for enough to pay the debt; that the maker of the notes was insolvent and also that the statute of limitations had run, so that in no event was there any other recourse to the noteholders than the property itself; and that there was no dispute that the noteholders were entitled to a decree of foreclosure. The court thereupon, and pending the decision on the appeal in the former case, appointed a receiver with power to collect the rents and operate the property, pay the operating charges, and hold the balance of the rents and income subject to further orders of the court.

This appeal is from the order appointing the receiver.

We are of opinion that the appointment of the receiver was providently made. The ascertainment by the court that the property would almost certainly sell for less than the debt, that the rents were then being collected by the holder of the legal title who was not responsible for the debt or any deficiency which might result—combined with the act of the latter in obstructing the sale for a year by an appeal which we ultimately held to be without merit—made a case in which it was clearly the duty of the court, pending such time when it could properly enter an order of foreclosure, to appoint a receiver to impound the rents. We said in Cassedy v. Strauch, 61 App.D.C. 2, 56 F.(2d) 493, that the power to appoint a receiver in a foreclosure suit is a power inherent in a court of equity, that its exercise rests largely in the discretion of the court, and it is to be exercised or withheld as appears to the

court on all the facts in the case to be equitable and just. And see, also, Wiswall v. Sampson, 14 How. 52, 14 L.Ed. 322. Here we have a case in which a mortgage debt has been in default for five years. By reason of the disqualification of the trustees appointed in the original deed of trust, it became necessary and proper to apply to the court for the appointment of new trustees, and because of default in payment of taxes it became necessary to apply to the court for the appointment of a receiver. These proceedings, rather than immediate foreclosure, were had without objection and in the interests of all parties since, in the then depressed condition of the real estate market in the city of Washington, it would have been ruinous to all concerned to sell the property. As a result of the appointment of a receiver and his control of the property for three years, the taxes were paid, together with the then due installments of interest; but a foreclosure was thereafter denied—whether properly or not we have no occasion here to inquire—because the original bill had not also alleged default in the principal debt. The receiver was discharged and the property returned to the Tottens, and foreclosure proceedings suspended while their appeal from the order substituting trustees remained undecided by this court. It was in this state of affairs that the present suit was begun. In these circumstances, to permit Totten to obstruct the sale on purely technical grounds and in the meantime collect the rents and convert them to his own use, would have been inequitable and unjust.

It is quite true there is a wide diversity of opinion in the states on the subject of the appointment of receivers in aid of foreclosure to take rents on behalf of the mortgagee pending the proceedings. In some of the states the rule is that there must be a showing of waste in addition to inadequacy of security and insolvency of debtor before a court of equity will lend its aid to a mortgagee. In others, that where default is made and the mortgagee is entitled to foreclosure, and where the security is inadequate, the mortgagee, on filing his bill of foreclosure, obtains an equitable lien on the rents; and, since the foreclosure requires time, on general principles of equity the court may appoint a receiver of the rents and profits accruing in the meantime, thus anticipating the decree and sale. Hollenbeck v. Donnell, 94 N.Y. 342, is typical

of the cases in which the rule last mentioned is applied.

■ In the District of Columbia the rule is that where the mortgagor is permitted to remain in possession of the property he is entitled to take the rents even after default and even though the land, when sold, should be insufficient to pay the debt. Phœnix Mutual Life Insurance Co. v. Grant, 3 MacArthur (10 D.C.) 220. This rule, as was said by the Supreme Court in Omaha Hotel Co. v. Kountze, 107 U.S. 378, 2 S.Ct. 911, 27 L.Ed. 609, grows out of the fact that it is only the property itself, and not the rents and profits, which is pledged. But, as the court also said in that case, courts of equity always have the power, when the debtor is insolvent, and the mortgaged property is insufficient security for the debt, and there is good cause to believe that it will be wasted or deteriorated in the hands of the mortgagor, as by cutting of timber, suffering dilapidation, etc., to take charge of the property by means of a receiver, and preserve not only the corpus but the rents and profits for the satisfaction of the debt; when justice requires this course to be pursued, and it is resorted to by the mortgagee, it will give him ample protection.

And in a later case, in which the allegation was that the debtor was insolvent, the property inadequate to satisfy the debt, and deteriorating for want of repairs, the Supreme Court approved the appointment by a court of the District of Columbia of a receiver for the benefit of the mortgagee. Grant v. Phœnix Mut. Life Insurance Co., 121 U.S. 105, 7 S.Ct. 841, 30 L.Ed. 905.

■ In some of the states the question is controlled by statute, but there is no statute in the District of Columbia. We think the equitable rule is that when the mortgaged property is not of sufficient value to insure payment of the debt and the mortgagor, or person liable for the deficiency, is insolvent, and there are superadded conditions which make an immediate sale impractical or impossible, courts of equity have power to take charge of the property by means of a receiver and preserve not only the corpus but the rents and profits for the satisfaction of the debt. In such circumstances, the loss inevitable in the delay takes the character of waste as clearly and distinctly as deterioration by the failure to make repairs or the cutting of timber, etc. In such a case the court may take possession of rents in order to preserve them for that party to the suit who is ultimately found to be equitably entitled to them. Hitz v. Jenks, 123 U.S. 297, 306, 8 S.Ct. 143, 31 L.Ed. 156; Shepherd v. Pepper, 133 U.S. 626, 652, 10 S.Ct. 438, 33 L.Ed. 706. And see, also, High on Receivers, § 666; Jones on Mortgages (8th Ed.) Vol. 3, § 1930; Central Trust Co. of N. Y. v. Chattanooga R. Co. (C.C.A.) 94 F. 275; Strain v. Palmer (C.C.A.) 159 F. 628; Town of Samson v. Chicago T. & T. Co., 208 Ala. 18, 93 So. 833; West v. Adams, 106 Ill.App. 114; Main v. Ginthert, 92 Ind. 180; Bristow v. Home Building Company, 91 Va. 18, 20 S.E. 946, 947; Price v. Dowdy, 34 Ark. 285.

■ Enoch Totten having answered under oath that he had no interest in the property or in the rents, and nothing being shown to the contrary, the bill should have been dismissed as to him.

Decree affirmed with costs as to Howe Totten; appeal dismissed with costs as to Enoch Totten.