## TOTTEN v. HARLOWE et al.
### No. 7268.

United States Court of Appeals for the District of Columbia.

Argued Oct. 11, 1939.

Decided Nov. 6, 1939.

Leo P. Harlow and Marshall H. Lynn, both of Washington, D. C., for appellant.

Paul E. Lesh and B. Woodruff Weaver, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

PER CURIAM.

This is the third appeal in the same litigation, which involves a mortgage on an apartment building in Washington City. The first[1] was from the substitution of trustees by the court below; the second,[2] from a decree appointing a receiver of the property. On each appeal we affirmed.

The facts to the date of the second appeal are fully stated in our opinion in 67 App.D.C. 132, 90 F.2d 377, 111 A.L.R. 726. For present purposes, they may be restated as follows: In 1929 Stern owned the building, known as Oaklawn Terrace, and mortgaged it for $385,000, payable in three years. Appellant Totten in 1930 purchased the property, subject to the trust. In 1932, taxes were in default, and the principal debt then due was unpaid. Harlowe, as holder of a part of the secured debt, filed a bill for appointment of a receiver, alleging *only* nonpayment of taxes. Subsequently he amended his bill with the object of having new trustees substituted under the mortgage. The receiver was appointed and remained in possession of the property three years. In this period he was able to pay out of the rents the delinquent taxes as well as the accrued interest on the mortgage. This was in 1935. On Totten's motion, the court in that year discharged the

---

[1] Totten v. Harlowe, 66 App.D.C. 373, 88 F.2d 755.

[2] Totten v. Harlowe, 67 App.D.C. 132, 90 F.2d 377, 111 A.L.R. 726.

receiver (the taxes being paid), but at the same time substituted new trustees under the mortgage. Totten appealed from this order. If the litigation had terminated at this time, the principal debt being then three years overdue, Harlowe would have had the right to demand foreclosure. But Totten, having by his appeal challenged the validity of the appointment of the new trustees, a fair sale of the property would have been impossible. Harlowe consequently filed a bill, alleging that the debt was due; that the security was insufficient; that the original maker of the notes was insolvent; that Totten was not liable on the notes and ought not to be allowed to remain in possession and collect the rents pending the determination of his appeal; and praying that the court appoint a receiver to collect the rents and hold them subject to the claims of the holders of the notes. Totten answered the bill. There was a trial on the merits, and in February, 1936, the court appointed a receiver and directed him to operate the property, collect the rents, pay the operating expenses, and preserve the balance subject to the further order of the court. In December, 1936, we affirmed the decree substituting trustees. But in the meantime Totten had appealed from the February, 1936, decree, and that appeal was not decided until March, 1937. In our opinion we said:[3] " * * * the appointment of the receiver was providently made. The ascertainment by the court that the property would almost certainly sell for less than the debt, that the rents were then being collected by the holder of the legal title who was not responsible for the debt or any deficiency which might result—combined with the act of the latter in obstructing the sale for a year by an appeal which we ultimately held to be without merit—made a case in which it was clearly the duty of the court, pending such time when it could properly enter an order of foreclosure, to appoint a receiver to impound the rents."

We also said that when a mortgage debt is due and the property is not of sufficient value to insure payment, and the mortgagor is insolvent, and there are superadded conditions which make an immediate foreclosure impracticable, courts of equity have power to take charge of the property by means of a receiver and preserve not only the corpus but also the rents and profits for the satisfaction of the debt.

Our mandate went down in April, 1937, and in January, 1938, the court below entered a decree for public sale of the mortgaged property. The sale occurred in May, 1938, and the accepted bid of the noteholders' protective committee was $250,000, leaving a deficiency of $134,500 in the principal of the debt. The sale was confirmed by the court in June, 1938, over Totten's objection. At that time the receiver held a rent fund of $25,000 subject to such deduction as the court might decree for expenses of the suit and counsel fees. The decree confirming the sale directed that this sum be added to the net proceeds of the sale and credited upon the debt. The present appeal is from this decree.

Two questions are presented:

1. Are the secured noteholders entitled to have the $25,000 surplus, or so much as remains after proper deductions, applied to the principal or should the same be paid over to appellant as owner of the property?

2. Was the sale fairly held, and was a fair price received for the property?

We are of opinion that the disposition of the fund made by the court below was correct, and also that the sale was properly held and the price received reasonable in the circumstances.

First. We have here a case in which the principal debt had been in default for six years. For the first two or three years, the noteholders recognized that the depressed condition of the real estate market offered neither an opportunity for a fair sale, nor any prospect of sale then or in the immediate future for an amount equal to the mortgage debt. They were confronted with the facts that taxes were in default, the maker of the notes was insolvent, and the owner of the property without liability for payment. In these circumstances, they properly asked that the property be placed in the hands of a receiver. Some three years later when market conditions had improved, but when it was still apparent that the property would not sell for the amount of the debt, they sought foreclosure, as was their right; and when they were obstructed by Totten's appeal, the effect of which was to leave him in possession of the property and with the right to receive the rents and use them without liability for the payment of the debt, they took the proper course, as we held, in ap-

---

3 67 App.D.C. at page 134, 90 F.2d at page 379, 111 A.L.R. 726.

plying to a court of equity for the appointment of a receiver to preserve not only the corpus, but also the rents and profits, for the satisfaction of the debt. In this view, the equities are wholly with appellees and, unless we are now prepared to adopt a different rule, we must on this point affirm the decree below. Upon reflection, we are convinced that our former opinion was correct, and we adhere to it as the applicable law in the present appeal (see cases cited in the former opinion).

We have examined Freedman's Savings & Trust Co. v. Shepherd, 127 U.S. 494, 8 S. Ct. 1250, 32 L.Ed. 163, relied on by appellant, and find nothing inconsistent with our present decision. In that case, before the appointment of any receiver, the rents had been pledged to a third person by an assignment found to be valid in every respect. In those circumstances, the equities were with the assignee. The Supreme Court expressly recognized the principle which we followed in the previous appeal and which it had announced in Kountze v. Omaha Hotel Co., 107 U.S. 378, 395, 2 S.Ct. 911, 27 L. Ed. 609, and later confirmed in Shepherd v. Pepper, 133 U.S. 626, 652, 10 S.Ct. 438, 33 L.Ed. 706.

 Second. Appellant asks that we set aside the sale because, as he says, under the restrictive provisions of the decree, the sale was not fair. Each bidder was required to deposit by noon of the day before sale $20,000 cash or $30,000 face amount of the secured notes. It is sufficient answer to this objection that at the hearing before the entry of the decree of sale counsel made no objection to its form. With commendable frankness, counsel stated to the court that there was no point in resisting the foreclosure because the debt was due and because after the foreclosure there would be a deficiency; that such questions as might arise in the future would relate to the rent fund in the hands of the receiver and that that question could await the consummation of the sale. But entirely aside from this, we can think of no valid objection to the provision. Its purpose is, of course, to avoid resales of property as the result of irresponsible bids made at the sale and, unless the condition is so onerous as to be prejudicial, it is a matter wholly within the discretion of the court having in hand the administration of the property. See Sage v. Central R. Co., 99 U.S. 334, 344, 25 L.Ed. 394; Maryland Perm. Land & Bldg. Soc. v.

Smith, 41 Md. 516; Tracy, Corporate Foreclosures, Sec. 208. Still another complete answer is appellant's failure to take an appeal from the decree of sale. Turner v. Farmers Loan & T. Co., 106 U.S. 552, 555, 1 S.Ct. 519, 27 L.Ed. 273; Chase v. Driver, 8 Cir., 92 F. 780, 784.

The final objection is that the price was inadequate. The court below held a hearing on this question and reached the conclusion that, all the circumstances considered, the price was fair and the sale should be confirmed. We have examined the evidence on which this decree is based and are of opinion that it supports the conclusion.

We are, therefore, of opinion the appeal is without merit and the decree below correct.

Affirmed.