**VIEW CREST GARDEN APARTMENTS, INC., et al., Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16761.

United States Court of Appeals Ninth Circuit.

Aug. 2, 1960.

Lycette, Diamond & Sylvester, Lyle L. Iversen, Seattle, Wash., for appellants.

Charles P. Moriarty, U. S. Atty., Richard F. Broz, James F. McAteer, Asst. U. S. Attys., Seattle, Wash., for appellee.

Before BARNES, HAMLEY, and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

The Government brought this action to foreclose a mortgage on property known as View Crest Garden Apartments, located in Bremerton, Washington. This

appeal involves the power of the District Court to appoint a receiver during the pendency of the foreclosure action.

■ The mortgage was originally given by appellant View Crest Garden Apartments, Inc., as mortgagor, to the National Bank of Commerce of Seattle, as mortgagee, to secure payment of indebtedness evidenced by a contemporaneous note executed by appellant in favor of the Bank. The Federal Housing Commissioner subsequently became the assignee of the note and mortgage.

Mortgage insurance was provided by the Federal Housing Commissioner pursuant to Title IX of the National Housing Act, as amended, 12 U.S.C.A. § 1750 et seq. Both the note and mortgage were on FHA forms. The mortgage provided that, in any action to foreclose, the holder would be entitled to appointment of a receiver to collect the rents due and becoming due during the pendency of the action, such rents "being hereby expressly assigned and pledged as additional security for the payment of the indebtedness secured by this mortgage * * *."[1]

Appellant defaulted and this action was instituted. In its complaint the Government prayed for appointment of a receiver pendente lite to take charge of and manage the premises, collect the rents, and apply the proceeds on the debt. The District Court denied the petition for appointment of a receiver for the reason that Washington law applied and did not permit appointment of a receiver under the facts of the case. The Government took an interlocutory appeal from this order and we reversed, holding that the District Court erred in applying state law rather than federal law as controlling. Accordingly, the case was remanded with instructions to the District Court to make a determination as a matter of federal law whether the facts warrant appointment of a receiver.[2] United States v. View Crest Garden Apts., Inc., 9 Cir., 1959, 268 F.2d 380, certiorari denied 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed. 2d 120.

On remand the District Court entered an order appointing a receiver with power to collect rents and manage the property.[3] In an oral opinion the Court

1. The relevant provisions are, in full, as follows:

"That if there is a default, regardless of whether or not the Mortgagee elects to foreclose this mortgage, the Mortgagee may collect all rents which may become due on the above property, deduct therefrom any necessary operating expenses and five per centum (5%) of the gross rents collected as compensation for making the collections, and apply the remainder on the balance due on the mortgage.

\* \* \* \* \*

"That the holder of this mortgage, in any action to foreclose, shall be entitled to the appointment of a receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to collect the rents, issues and profits of said mortgaged premises, due and becoming due during the pendency of such foreclosure suit, such rents and profits being hereby expressly assigned and pledged as additional security for the payment of the indebtedness secured by this mortgage, without regard to the value of the mortgaged premises or the solvency of any person or persons liable for the payment of the mortgage indebtedness. The Mortgagor for himself and any subsequent owner hereby waives any and all defenses to the application for a receiver as above and hereby specifically consents to such appointment without notice, but nothing herein contained is to be construed to deprive the holder of the mortgage of any other right, remedy, or privilege it may now have under the law to have a receiver appointed."

2. We stated that "The United States Supreme Court has suggested a starting point for developing federal decisional law in nondiversity cases by pointing to the rules developed by the federal courts in diversity cases before Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 \* \* \*," citing Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838. United States v. View Crest Garden Apts., Inc., 9 Cir., 1959, 268 F.2d 380, 383.

3. The order appointing a receiver provides:

"1. That a receiver pendente lite of the rents, issues and profits of the mort-

first noted that the property mortgaged was and is inadequate in value to discharge the indebtedness allegedly due and owing, and that appellant will be unable to satisfy any deficiency. After discussing Totten v. Harlowe, 1936, 66 App.D.C. 373, 88 F.2d 755; 1937, 67 App.D.C. 132, 90 F.2d 377, 111 A.L.R. 726; 1939, 71 App.D.C. 141, 108 F.2d 8, and a number of other federal cases,[4] including diversity cases decided prior to Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1183, the Court concluded that—

* * * the general rule seems to require something more than mere inadequacy of the security and insolvency of the debtor for the appointment of a receiver. The only question is how much more * * *.

Totten v. Harlowe, supra, seems to announce a rule most consonant with justice for all parties concerned. There the court held that if the property is not of sufficient value to insure payment, and the mortgagor is insolvent, and there are superadded conditions which make an immediate foreclosure and sale im-

practical, courts of equity have power to take charge of the property both for preservation of the corpus and application of the rents and profits upon the mortgaged debt. That is the rule that will be applied here, and the court then looks to the record to see if there are superadded conditions here making an immediate foreclosure impractical.

In looking to the record to determine if such superadded conditions appeared in this case, the Court concluded that past and probable future delays in accomplishing foreclosure, delays for which appellant is at least partially responsible, justified appointment of a receiver.

The Government, of course, believes the action of the District Court in appointing a receiver should be sustained, but contends its right to a receiver must be judged solely by reference to the terms of the mortgage, and irrespective of adequacy of the security, solvency of the debtor, or "superadded conditions." Under this theory the Government would be entitled to a receiver upon default by the debtor and commencement of a foreclosure action.

gaged premises described in the complaint on file herein be appointed * *.

2. Said receiver is hereby directed to manage and conserve the assets of said property, collect the rents, issues and profits of the same due and becoming due during the pendency of this action.

3. Said receiver is hereby directed to examine and if necessary make copies of the records and accounts of the defendant, View Crest Garden Apartments, Inc., and report to the court on the rents and profits of the mortgaged premises received by the defendants herein during the pendency of this action and prior to the appointment and qualification of the receiver, and, further, report all expenditures made therefrom by said defendants.

.4. Said receiver is further directed to apply the rents and profits received from the management and operation of said property in accordance with the further order of this court.

4. Freedman's Savings & Trust Co. v. Shepherd, 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163; Grant v. Phoenix Mutual

Life Insurance Company, 121 U.S. 105, 7 S.Ct. 841, 30 L.Ed. 905; Teal v. Walker, 111 U.S. 242, 4 S.Ct. 420, 28 L.Ed. 415; Omaha Hotel Company v. Kountze, 107 U.S. 378, 2 S.Ct. 911, 27 L.Ed. 609; Garden Homes, Inc. v. United States, 1 Cir., 200 F.2d 299; 207 F.2d 459; Tower Grove Bank & Trust Co. v. Weinstein, 8 Cir., 119 F.2d 120; Totten v. Harlowe, 67 App.D.C. 132, 90 F.2d 377, 111 A.L.R. 726; McNamara v. Hart, 8 Cir., 83 F.2d 649; Associated Co. v. Greenhut, 3 Cir., 66 F.2d 428; In re Morris White Holding Co., D.C., 52 F. 2d 499; Mortgage Loan Co. v. Livingston, 8 Cir., 45 F.2d 28; Colonial Trust Co. v. Stone Harbor Electric Light & Power Co., D.C., 280 F. 245; In re Clark Realty Co., 7 Cir., 234 F. 576; New York Trust Co. v. Michigan Traction Co., D.C., 193 F. 175; Morrill v. American Reserve Bond Co., C.C., 151 F. 305; In re Banner, D.C., 149 F. 936; Atlantic Trust Co. v. Dana, 8 Cir., 128 F. 209; Central Trust Co. of New York v. Chattanooga, R. & C. R. Co., 5 Cir., 94 F. 275; O'Hara v. Mobile & O. R. Co., C.C., 75 F. 130.

Appellant, on the other hand, contends the Government is not entitled to a receiver except upon a showing of insolvency, inadequacy of the security, and danger that the property will be wasted or deteriorated.

In Garden Homes, Inc. v. United States, 1 Cir., 1952, 200 F.2d 299, 301, as here, the District Court appointed a receiver with broad general powers to manage and operate the mortgaged property pending foreclosure, including power to collect its rents and profits during that time. The mortgage provided and the mortgagor apparently conceded that appointment of a receiver to collect the rents and profits was proper, but contended that the District Court erred in giving the receiver power to manage and operate the property in addition to power to collect rents and profits during pendency of the foreclosure action. Faced with this contention, the Court suggested a distinction between (1) a situation justifying appointment of a receiver with power only to collect rents, issues and profits due and becoming due during the pendency of a suit to foreclose, and (2) a situation justifying appointment of a receiver with power to manage the mortgaged property pending foreclosure, as well as to collect rents and profits during that time.

The Court indicated approval of the rule that a receiver with power only to collect rents and profits will not be appointed except upon a showing that (1) the mortgaged property is inadequate security, and (2) that the mortgagor or other person liable for the debt is insolvent; and that "to warrant the appointment of a receiver to manage and operate, as well as only to collect rents and profits, there must be at least a 'sufficient showing' of something more than the inadequacy of the security and the doubtful financial standing of the debtor." The Court concluded that there had not been a sufficient showing of something more, and that the District Court had "acted improvidently in giving the receiver general powers of operation and management in addition to power to collect rents and profits." [5]

In Central Trust Co. of New York v. Chattanooga, R. & C. C. R. Co., 5 Cir., 1899, 94 F. 275, 281, it is stated:

"When the mortgaged property is not of value sufficient to secure the payment of the mortgage debt, or when its sufficiency becomes substantially doubtful, and the mortgagor is insolvent, accruing interest matured and unpaid, like accruing taxes due and unpaid, takes the character of waste as clearly and distinctively as deteriorations by the cutting of timber, suffering dilapidation, etc. * * *."

We hold that in an action brought to foreclose a mortgage insured under Title IX of the National Housing Act a District Court is empowered, under the terms of the mortgage and on application by the holder thereof, to appoint

---

5. The Court said, 200 F.2d 299, 301–302: "But how much in addition to these matters [inadequacy of the security and the doubtful financial standing of the debtor] must be shown to warrant the appointment of a general receiver we do not need to determine in this case, for up to this point all that has been made to appear, in addition to a clear showing of a valid mortgage and a *prima facie* indication of a default, are doubts, resting for the most part upon inferences, as to the value of the property as security and the financial stability of the debtor. Although the showing of these matters may not be 'plain,' we do not understand the defendant to complain of the appointment of a receiver to collect only rents and profits in view of the express provision in the mortgage permitting the appointment of such a receiver in the event of a default. However, from the meagre showing so far made, we think that even giving wide latitude to the discretionary powers of a court of equity in the premises, it must be said on the authorities cited herein that the court below acted improvidently in giving the receiver general powers of operation and management in addition to power to collect rents and profits."
The same case was appealed a second time. Garden Homes, Inc. v. United States, 1 Cir., 1953, 207 F.2d 459.

848

a receiver to collect the rents, issues and profits during the pendency of the foreclosure action, at least when he is satisfied the security is inadequate, or its adequacy is substantially doubtful, and the mortgagor is insolvent or of doubtful financial standing.

Even if inadequacy of the security and insolvency of the debtor did not appear, consideration of other circumstances discloses impressive reasons for appointing such a receiver in this case.

Mortgage insurance was provided pursuant to § 908 of Title IX of the National Housing Act, 12 U.S.C.A. § 1750g, which authorized the Federal Housing Commissioner to insure mortgages on multifamily rental projects. The House Report (U.S.Code Cong. and Adm. Service 1951, p. 1720) discloses that Title IX was enacted "to provide special mortgage insurance aids to private industry for the production of housing needed in defense areas", and that the FHA would be permitted to "underwrite projects which might not meet the long-term normal criteria of economic soundness, especially as to location and continued marketability, which are required under the regular FHA program." Appellant's Articles of Incorporation show that one

of the principal objectives of the corporation was to secure financing under § 908.[6]

Without federal backing there would have been no loan, no mortgage, and probably no corporation. Congress, in order to obtain necessary rental accommodations for essential defense workers, authorized the Federal Housing Commissioner to provide financial insurance for risky, commercially unacceptable projects. It is not unnatural that the mortgage contains a provision entitling the holder to a receiver of rents and profits in the event of foreclosure. Having in mind the stipulation in the mortgage and the nature of the transaction, we perceive no good reason for saying that federal law denies to the government a remedy calculated to advance "the federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit * * *." United States v. View Crest Garden Apts., 9 Cir., 1959, 268 F.2d 380, 383. To the contrary, we think good reasons appear for holding that federal policy requires affording every reasonable protection to the security of federal investment.

6.                Article II
The purpose for which the corporation is formed and the business and objects to be carried on and promoted by it are as follows:

(a) To create a private corporation to provide housing for rent on a monthly or yearly basis or for sale, said corporation to be regulated by the Federal Housing Commissioner as to rents or sales, charges, capital structure, rate of return and methods of operation, all pursuant to the provisions of Section 908 of Title IX of the National Housing Act, as amended, and as such to acquire any real estate or interest or rights therein or appurtenant thereto and any and all personal property in connection therewith.

(b) To improve and operate, and to sell, convey, assign, mortgage or lease, subject to provision (a) above, any real estate and any personal property.

(c) To borrow money and issue evidences of indebtedness in furtherance of any or all of the objects of its business;

to secure the same by mortgage, deed of trust, pledge or other lien.

(d) To apply for and obtain or cause to be obtained from the Federal Housing Commissioner (hereinafter called the Commissioner) a contract or contracts of mortgage insurance pursuant to the provisions of the National Housing Act as amended and applicable Administrative Rules and Regulations, covering bonds, notes and other evidences of indebtedness issued by this corporation and any indenture of Mortgage or Deed of Trust securing the same. So long as any property of this corporation is encumbered by a mortgage or Deed of Trust insured by the Commissioner it shall engage in no business other than the construction and operation of a Rental Housing Project or Projects.

(e) To enter into, perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of any one or more of the purposes of the corporation.

However, as inadequacy of the security and insolvency of the debtor do appear here, we need not go this far.

As noted, the District Court appointed a receiver not only to collect the rents, issues and profits of the mortgaged premises, but in addition, to manage the property during the pendency of the foreclosure action. The mortgage here does not provide for appointment of a receiver with these additional powers. We adhere to the distinction drawn in Garden Homes, Inc. v. United States, 1 Cir., 1952, 200 F.2d 299, between a receiver with power only to collect rents and profits and a receiver with the additional power to manage the property. Receivership is an equitable remedy and a receiver will be appointed when "the most speedy and perfect administration of justice and the rights of the parties interested in the property will be best secured by such action." Morrill v. American Reserve Bond Co., C.C.1907, 151 F. 305, 313. It having been determined that appointment of a receiver to collect the rents and profits is proper, sensible administration may require that the receiver be given the additional power to manage the property, particularly where, as here, an additional factor appears.

The additional factor may be the danger of waste. Omaha Hotel Co. v

Kountze, 1883, 107 U.S. 378, 2 S.Ct. 911, 27 L.Ed. 609; Grant v. Phoenix Mutual Life Insurance Company, 1887, 121 U.S. 105, 7 S.Ct. 841, 30 L.Ed. 905; Freedman's Savings & Trust Co. v. Shepherd, 1888, 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163; More recently this additional factor has been spoken of as a "superadded condition," Totten v. Harlowe, 1937, 67 App.D.C. 132, 90 F.2d 377, 111 A.L.R. 726, or merely as "something more." Garden Homes, Inc. v. United States, 1 Cir., 1952, 200 F.2d 299. In brief, it may be any circumstance which commends itself to a court of equity as a reason for granting the relief sought.

In this case the District Court decided, in the light of past and prospective delays in accomplishing foreclosure, that the time had come for appointment of a receiver. Some of the delays he referred to in his oral opinion are set out in the footnote.[7] We think impossibility or impracticability of prompt foreclosure, irrespective of the fault therefor, is a circumstance proper for consideration, and that in appointing a receiver with broad authority the Court acted well within the discretionary powers a court of equity exercises in appointing a receiver.

Affirmed.

7. "First, it should be noted that the complaint for the foreclosure of these mortgages was filed on March 18, 1958, almost one year and nine months ago. While this delay in itself is unconscionable, the fault thereof cannot be laid entirely at defendants' doorstep, but enough can, namely, defendants caused substitution of counsel which prevented expeditious foreclosure.

＊　＊　＊　＊　＊

"Moreover, defendants, in their answer, deny the validity of the obligation evidence by the mortgage involved. In addition, they allege, as one of five affirmative defenses, that the dispute has been orally settled and compromised. Counsel for the defendants admitted in open court upon the last hearing had in this matter that foreclosure could not be expeditiously accomplished. All of these things indicate to the court that in addition to all of the delays which have already transpired, further delays are to be expected."